[Civ. No. 256.   Second Appellate District.—October 18, 1906.]

## K. V. REDPATH, Appellant, v. EVENING EXPRESS COMPANY, Respondent.

NEWSPAPERS—CARRIER SERVICE—BREACH OF CONTRACT—ASSIGNMENTS— DISSUASION OF PURCHASERS—PLEADING—INSUFFICIENT COUNTS.— Counts of a complaint for breach of contract between plaintiff and defendant newspaper company for carrier service, which provided that plaintiff might sell such carrier service or any part thereof at an advanced price, if the third party be first accepted and approved by defendant, which do not allege that assignments to proper purchasers were consummated and presented to defendant for acceptance and approval, and that the same were refused, but merely that certain intended purchasers, who applied for approval, were dissuaded by statements of defendant, not in themselves actionable, from making the purchase', to plaintiff's damage in a specified sum on each count, are insufficient to state a cause of action.

ID.—RIGHT OF RECOVERY ON THIRD COUNT—PAYMENT FOR SUBSCRIBERS— COUNTERCLAIM—STIPULATED EXPENSE FOR BREACH—TENDER.— Where the third count of the complaint stated a cause of action to recover $843 for *bona fide* subscribers, to be paid for upon termination of the contract by defendant, which was not denied in the answer, in which there was a counterclaim of $147.15 for papers sold, and a claim of $60 damage for breach of the contract by plaintiff to furnish a list of subscribers, which sum was stipulated as an expense incurred by defendant therefor, and a mere plea of tender before suit, it was error for the court to refuse to render judgment for plaintiff for recovery of the residue.

ID.—TENDER NOT EXTINGUISHING OBLIGATION.—An obligation for the payment of money is not extinguished merely by a tender before suit, where it does not appear that the money was deposited with some bank, as prescribed by section 1500 of the Civil Code.

ID.—PLAINTIFF'S BREACH WHEN NOT A CONDITION PRECEDENT.—At law it was only where the obligation broken by the plaintiff was a condition precedent that the breach was a defense. But no obligation of plaintiff's contract can be regarded as a condition precedent when not made so by the express terms of the contract, or by necessary implication, and where the obligation broken by plaintiff is not expressed in the contract, and not probably thought of by the parties, and is merely added to it by legal construction, it cannot have been regarded by the parties as a condition precedent to the defendant's obligation.

ID.—BREACH OF CONTRACT, WHEN NOT A DEFENSE IN EQUITY.—In equity, whether the condition is precedent or otherwise, the breach of it is not a defense, where it is partial, and either immaterial or capable of being fully compensated.

ID.—EQUITABLE PRINCIPLES DETERMINATIVE UNDER THE CODE—COMPENSATION FOR BREACH.—Under our system, the distinction between law and equity is abolished; and where the answer shows that plaintiff's breach of the contract was partial and capable of being fully compensated, and was compensated by the stipulated expense incurred by defendant to make good the breach, equitable principles are determinative of the case, and the breach is no defense beyond the amount of such compensation.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, for Appellant.

Anderson & Anderson, for Respondent.

SMITH, J.—Appeal from a judgment for the defendant, and an order denying the plaintiff's motion for a new trial. The suit was brought for breach of a written contract, of date September 12, 1898, between defendant as party of the first part and the plaintiff as party of the second part; of which the following are the material parts:

"The Evening Express Company, in consideration, etc., ... does by these presents grant, bargain, sell and con-

vey unto the said party of the second part, his executors, administrators and assigns, the carrier service of the Evening Express in the limits of the City of Los Angeles described as follows: [Here follows description and provisions as to copies of the Express to be sold to the party of the second part and as to services to be performed by him.] . . .

"It is further agreed by said second party that he will not sell, lease or otherwise dispose of said carrier service, or any part thereof, to any person or persons, without the previous consent and full approval in writing of the Evening Express Company, which reserves the right, in case the service of the papers to subscribers shall be unsatisfactory, or the work of canvassing and building up the list by said second party shall be inefficient, to re-purchase back and resume control of all said carrier service by paying to said second party the sum of $1.50 per name for all names of *bona fide* subscribers on his books on the date of such notice of their intention to re-purchase. It is further expressly agreed that the Evening Express Company shall be the sole judge of the satisfactory service of its papers, or of the efficiency of the work of said second party, and it agrees to give him thirty (30) days' notice of such intention to re-purchase its carrier service in said territory hereinbefore described.

"But the said second party shall first have the privilege of selling said carrier service, or any part thereof, to a third party or parties at a higher rate per name, provided the third party be first accepted and approved by the Evening Express Company, etc. [Here follows a provision empowering the party of the first part to require the second party to subdivide the carrier district whenever in its judgment the territory is too large for him to serve and canvass efficiently, the second party agreeing within thirty days of such notice to sell such portion of the district as may be required by the first party to some person or persons satisfactory to it; and on failure of the second party to sell, reserves to the first party the right to re-purchase such portion of the carrier district at the rate of $1.50 per name for each *bona fide* subscriber, etc.; and provisions as to the number of copies to be purchased by the second party and the terms of purchase, with some other provisions immaterial to the present controversy.] . . .

"The Evening Express Company reserves the right to solicit new subscribers within the carrier district limits defined herein, and said second party agrees to pay said Evening Express Company the sum of twenty-five cents for each *bona fide* new subscriber" thus secured for him, etc.

The complaint contains three counts, in all of which the contract is set out or made part by reference, and the sale of part of the district, the termination of the contract by the defendant, and the performance of its conditions by the plaintiff, alleged.

In the first count it is further alleged, in effect: That within a period of thirty days from the notice terminating the contract it was agreed by the plaintiff and one McIntyre that the latter should purchase the carrier service at the price of $3,000, provided McIntyre should be accepted and approved by the defendant; that McIntyre applied to the defendant to learn whether he would be accepted and approved, but that by certain statements and representations made to him by the defendant with intent of preventing him from making the purchase, McIntyre was prevented from purchasing, to plaintiff's damage in the sum of $3,000, etc.

In the second count, similar allegations are made as to one Barton, who had agreed with plaintiff to purchase the route for the sum of $2,500.

In the third count, besides the general allegations common to the three counts, the material allegation is as follows: "At the time of said notice hereinbefore referred to, so given by the defendant to the plaintiff, there were on the books of plaintiff five hundred and sixty-two names of *bona fide* subscribers, and by reason of said notice and the termination of plaintiff's interest under said contract by said notice there became due to the plaintiff on the fifth day of November, 1901, the sum of $843, no part of which has ever been paid to the plaintiff, and the whole thereof is now due, owing and unpaid from the defendant to the plaintiff."

A general demurrer was interposed to each count of the complaint and sustained as to the first two.

The answer to the third count consists of a denial of performance of the contract by the plaintiff without assignment of any particular breach, and of a counterclaim for the sum of $147.15, due to the defendant under the terms of the contract for papers sold to the second party.

Upon the issues thus made the court finds, in effect: (1) That the plaintiff has not performed all the obligations of the contract, but has failed and refused to perform "certain obligations and conditions of said agreement by him to be kept and performed"; (2) that it is not true "that there became due to plaintiff on the fifth day of November, 1901, or any other time, or at all, the sum of $843, or any other sum"; (3) that on November 5th the defendant tendered to plaintiff $1.50 per name for all *bona fide* subscribers to the "Evening Express," and then and there demanded of plaintiff to turn over to the defendant the names of such subscribers, but the plaintiff refused to accept the tender or to turn over the names; and (4) that the allegations of the defendant's counterclaim are true.

Upon a fair construction of these findings, it must be assumed that the only breach of the contract on the part of the plaintiff was the refusal to turn over the names of the subscribers referred to in the third of the findings enumerated; and in this connection, it appears from the statement on motion for new trial that "it was stipulated that the defendant paid out and incurred a sum not exceeding $60 to obtain through its own agency the list of subscribers on the books of the plaintiff." This stipulation was offered in evidence, but excluded by the court, the plaintiff excepting; and this is assigned as error by him. But the error, if any, is immaterial, as the stipulation itself may be considered as of equal value as a finding.

The judgment is that plaintiff take nothing by his action, and that the defendant recover the amount of its counterclaim.

The points urged by the appellant are: That the demurrers to the first two counts of the complaint were improperly sustained; and that on the findings there should have been a judgment for the plaintiff.

As to the first point, it may be assumed for the purposes of the decision: That the right of assignment given to the plaintiff by the terms of the contract was not a mere privilege thereafter to be conferred or not at the option of the defendant, but a substantial right regarded by the parties as valuable and as constituting part of the consideration of the contract; that the condition imposed by the contract of acceptance and approval by the defendant was inserted

merely for the purpose of protecting the defendant against an assignment to an inefficient or otherwise objectionable purchaser; that this power could be exercised for that purpose only, and not arbitrarily for the purpose of evading the provisions of the contract; and hence that, in the present case, under the circumstances alleged, the defendant was under obligation upon demand to accept and approve the purchasers referred to in the complaint. But the fault of the complaint is, that it is not alleged that assignments to the purchasers as distinguished from agreements looking to that end were in fact made, or that the acceptance and approval of the assignments were either demanded of or refused by the defendant. The most that can be gathered from the complaint is that the defendant, by certain representations or statements—which were not in themselves actionable—prevented or persuaded the intended purchasers from making the purchases; from which it must be inferred, either that there were no actual contracts between them and the plaintiff or that the latter voluntarily released them. Had the assignments been consummated and presented to the defendant for acceptance and approval, and such acceptance and approval been refused by the defendant, a different case would be presented. We are of the opinion, therefore, that the demurrers to the first two counts of the complaint were rightly sustained.

As to the second point, it would seem clear on the express allegations of the complaint showing an indebtedness at the time of the termination of the contract from the defendant to the plaintiff in the sum of $843 for the "562 names of *bona fide* subscribers" then on the books of the plaintiff—which are not denied by the answer—that the plaintiff was entitled to judgment for that amount, less the sum of $147.15, counterclaimed by the defendant, with damages not exceeding $60 for expenses incurred by the defendant in getting the names of the subscribers; and we are at a loss to understand upon what principle this relief was denied to him. It is clear, however, that the judgment must rest on one of two propositions: The one, that the admitted obligation of the defendant to pay the amount alleged was extinguished by the tender found to have been made by it; the other, that the obligation was extinguished by the refusal of the plaintiff to turn over to the defendant the names of the subscribers. But

we are of the opinion that neither of these propositions can be maintained.

As to the first, an obligation for the payment of money is not extinguished by a tender, unless the money is deposited with some bank as prescribed in section 1500 of the Civil Code.

As to the second, it may be assumed that the plaintiff was under obligation to turn over to the defendant the names of subscribers, and that in refusing to do so he was guilty of a breach of the contract; and further, that until this information was given to the defendant or otherwise obtained by it, it would be justified in refusing to perform. But here it appears by stipulation that the information was in fact obtained by the defendant at an expense of not more than $60 within a short period after the plaintiff's refusal and before the commencement of the suit, which did not occur until about nine months afterward. The case presented is, therefore, that the defendant had received from the plaintiff under the contract the sum of $843, which it was under admitted obligation to pay; and the contention is that by reason of the plaintiff's breach of the contract—by which it was not damaged in excess of $60 and which could be fully compensated by that amount or less—the obligation was extinguished and the right of the plaintiff forfeited.

This contention can be maintained only upon the · broad ground that any breach of the terms of a contract by a party deprives him of the right to maintain an action against the other party to enforce the obligation of the latter. But this is not the law; nor has it ever been, either at law or in equity. At law it was only where the obligation broken by the plaintiff was a condition precedent to defendant's obligation that the breach was a defense. Nor was any obligation of the contract regarded as a condition precedent unless made so by the express terms of the contract, or by necessary implication. (1 Chitty's Pleading, 321, 322; Civ. Code, secs. 1439, 1498; Code Civ. Proc., sec. 457; Anson on Contracts, 287, 303 et seq., 308 et seq., 376 et seq.,) But here the obligation broken is not expressed in the contract and was probably not thought of by the parties, but is a merely implied obligation added to the contract by construction of law. (Civ. Code, secs. 1643, 1655, 1656.) It could not, therefore, have been

regarded by the parties as a condition precedent to the defendant's obligation.

But, under our system, the distinction between legal and equitable suits has been abolished, and in any suit the plaintiff is entitled to either legal or equitable relief, or both, as may be required by the case made (*Grain* v. *Aldrich*, 38 Cal. 514, [99 Am. Dec. 423]); and where equitable principles will apply, they will be determinative of the case. Hence, in our system the rules formerly prevailing at law have been essentially modified by the principles of equity, and, to the extent the latter will apply, superseded. But in equity the failure to perform an obligation of the contract, whether a condition precedent or otherwise, where "it is only partial and either entirely immaterial or capable of being fully compensated," has always been regarded as insufficient to constitute a defense. (Civ. Code, secs. 3386, 3392.) And this under our system has become a general principle of the law. Nor, in view of the settled principles of equity, could it be otherwise; for in case of a partial breach of the contract, as in this case, the defendant has received and voluntarily retains so much of the consideration and has become subject to a corresponding obligation; and hence in cases to which the strict legal rule would apply, if any, a forfeiture of the plaintiff's corresponding right would occur; against which equity on other principles would relieve. (Civ. Code, secs. 1477, 3275.)

We are of the opinion, therefore, that judgment should be entered in favor of the plaintiff for the sum of $843, less the sum of $147.15, and less also the sum of $60—if the plaintiff be willing to admit that to be the amount of the expenses incurred by the defendant in obtaining the names of subscribers; and otherwise, the amount of such expenditures as may be found by the court, together with interest on the balance from the date of the commencement of the suit, or from the date of such expenditures, as the case may be.

The judgment and order appealed from are reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

Gray, P. J., and Allen, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1906.