[Civ. No. 1812.   Fourth Appellate District.—April 26, 1937.]

CHARLES L. KAUPKE, as Treasurer, etc., Respondent, v. LEMOORE CANAL AND IRRIGATION COMPANY (a Corporation), Appellant.

H. Scott Jacobs and Edward T. Houghton for Appellant.

Conley, Conley & Conley for Respondent.

MARKS, J.—This is an appeal from a judgment whereby plaintiff recovered from defendant $4,162.75 principal, together with interest and attorneys' fees.

Plaintiff is water master under provisions of the contract dated May 3, 1927, signed by defendant and eighteen other corporations and irrigation districts. This contract defined the rights of the signers, except the Foothill Irrigation District, in waters of the Kings River and is called "Water Right Indenture". The Foothill Irrigation District, while it executed the instrument, seems to have asserted no rights under it.

This water right indenture fixed the number of second feet of the flow of the river to which each signer was entitled, based on the number of second feet of the total flow of the river to which all of the signers were entitled, and which would vary with the actual flow of the river. It did not attempt to apportion all the flow of the river as others, not parties to this agreement, had rights to some of the water. What is called an administrative agreement was executed by the same parties and forms the basis of this action, while certain provisions of the water right indenture furnish the grounds of special defenses interposed to it.

The administrative agreement refers to the water right indenture and by reference incorporates within its terms what is called the "Kings River Monthly Diversion Schedule" which sets forth in detail the number of second feet of the flow of the river to which each of the eighteen signers is entitled, varying with the months and the total flow of the river. It forms what is called the "Kings River Water Association" composed of the signers of the agreement. It creates the "Board of Directors of the Kings River Water Association" to be composed of one representative from each member irrigation district and corporation. It also provides for an executive or managing committee and a water master.

The administrative agreement contains the following provisions:

"That said association, acting by and through its Board of Directors, shall have and is hereby granted control and supervision over the waters of said Kings River and over the flow and diversion thereof to the extent in said Schedule

provided, and said Association acting by and through its said Board of Directors, shall cause the water which each of the parties hereto is so entitled to divert from said Kings River to be turned to it at the times, in the quantities and in the manner provided in said Schedule, and to protect and defend the said rights and interests respectively of all the parties hereto in and to the waters of said River, and in and to the diversion and use thereof under said Schedule; . . . it being expressly understood and agreed that it shall be the duty of said Association and of its Board of Directors and of any person whom it may employ as a Water Master, to protect to the fullest extent the rights of all the parties hereto in the particulars aforesaid and to prevent the invasion of the respective rights of the parties hereto, and to prevent the diversion and appropriation by others not parties hereto of the waters of said River to which the parties hereto are respectively entitled under said Schedule, and to report promptly to each of the parties hereto any and all invasions of and interferences with their said respective rights, and to take prompt and effective measures to protect said respective rights and prevent all invasions thereof. . . . Said Board shall make an estimate of the probable cost of conducting the business of said Association until the month of March next following the date of such organization, and it shall in the month of March of each year thereafter make a like estimate of the probable cost of conducting the business of said Association for the year next following the date of such estimate; and that each such estimate shall include all indebtedness contracted during the previous year which said Association may not have had the means to pay, and said Board of Directors acting by or through its Secretary or Treasurer shall make a demand or requisition upon each of the parties hereto for its proportionate part of such estimate, or its proportionate part of any instalment of such estimate, provided said Board of Directors shall require (and it shall have the right to so require) the payment of its estimates to be made in instalments, and each of the parties hereto shall immediately be and become liable for and hereby agree and binds itself to pay within sixty (60) days after such demand or requisition to the Treasurer of said Association its part of such estimates or instalment thereof; . . . ''

Then follows a schedule showing the percentage of such assessments to be paid by each member with the provision that

each member shall become liable to and shall pay its assessment to the treasurer of the association who may sue to collect any delinquent assessment, besides interest, and reasonable fees for the services of his attorneys. In case of litigation it is also provided that assessments be levied and paid by the members, or in certain cases, only the members directly interested, to defray the expenses of the litigation.

The complaint alleges that various assessments were levied on the members of the association; that the members were regularly notified of them; that defendant failed to pay some of them either in whole or in part. Judgment is sought for the unpaid balance of the assessments together with interest and attorneys' fees.

The answer puts in issue certain of the allegations of the complaint which are not now urged here and may be considered abandoned. The defenses with which we are concerned are three; breach of contract in failing to deliver to defendant the water to which it was entitled under the Kings River Monthly Diversion Schedule; failure to protect the rights of defendant to its water by failing to prosecute an action enjoining another water user from interfering with such rights by the appropriation of part of such water; the plea of the statute of limitations.

The trial court found in great detail that all the allegations of the complaint were true; that there had been no breaches of the contract in the particulars specified; that no part of plaintiff's cause of action was barred by the statute of limitations.

The divergence of opinion between plaintiff and defendant arises over the proper construction to be placed on the provisions of the water right indenture and the administrative agreement. If the obligation to make the payments and the obligation to deliver water and to prosecute or defend lawsuits were mutually dependent covenants or conditions, and the consideration for the payments was delivering the specified amount of water and prosecuting or defending the lawsuits, the failure to deliver the water or to prosecute or defend a lawsuit could be plead as a special defense. If, on the other hand, the obligations were independent one from the other and were separate and distinct, then the breach of the obligation to furnish water or to prosecute or defend lawsuits would constitute no proper de-

fense in an action to recover unpaid assessments although the damages suffered might be set up by way of counterclaim or cross-complaint. (*Fresno Canal & Irr. Co.* v. *Perrin,* 170 Cal. 411 [149 Pac. 805]; *Consolidated Irr. Dist.* v. *Crawshaw,* 130 Cal. App. 455 [20 Pac. (2d) 119]; *Madera Canal & Irr. Co.* v. *K. Arakelian, Inc.,* 103 Cal. App. 592 [284 Pac. 971].)

In the case of *Fresno Canal & Irr. Co.* v. *Perrin, supra,* it is said:

"The plaintiff contends that the admitted fact that the defendant has failed to make the annual payments thereon precludes her from relief by way of damages for the alleged failure of plaintiff to furnish water as the agreement required. By the terms of the agreements, the annual payments were to be made on the first Monday of September of each year and, in case of default thereon for thirty days, the plaintiff, at its option, might terminate the agreement. The evidence shows that the plaintiff did not avail itself of this option, but that, on the contrary, it treated the agreements as still in force and continued thereafter to deliver some water in pursuance thereof, as before, and to recognize the contracts as obligatory upon itself. It claimed that it had delivered all the water demanded. If it were conceded that the covenant of the plaintiff to furnish water and that of the defendant to make the annual payments were dependent, or that the annual payment was a condition precedent to the furnishing of the water, we think this conduct of the plaintiff would operate as a waiver of its rights to terminate or avoid the contract for failure to pay the annual instalments, so far as it affected the right of the defendant to demand and receive water thereafter and to claim damages for the failure of the plaintiff to furnish it. (*Los Angeles etc. Corp.* v. *Amalgamated Oil Co.,* 168 Cal. 140, 143 [142 Pac. 46]; *Cincinnati etc. Co.* v. *Baker,* 130 Ill. App. 414, 416.)

"But the covenants are not dependent or concurrent. The water was to be furnished, when wanted, continuously from February 19, 1897, to February 16, 1921, while the payments were to be made annually as aforesaid. The furnishing of the water for the first six months could not be dependent upon or concurrent with the payment to be made in the following September. The same would be true of each succeeding year, upon the plaintiff's election not to

terminate the agreements by reason of the failure of the defendant to pay. Where the covenants of the respective parties are to be performed at different times they are held to be independent and the breach by one party of his covenant does not excuse the performance by the other of his covenant or relieve him of liability for damages for a breach thereof. (*Southern Pac. R. R. Co.* v. *Allen,* 112 Cal. 455, 461 [44 Pac. 796] ; *Front St. M. & O. R. R. Co.* v. *Butler,* 50 Cal. 574, 577; *Bank of Woodland* v. *Duncan,* 117 Cal. 412 [49 Pac. 414] ; *Deacon* v. *Blodget,* 111 Cal. 416, 418 [44 Pac. 159].) Upon these facts, the most that the plaintiff can claim on account of the failure of the defendant to make the payments is the right to recover the same and to have the amount thereof set off *pro tanto* against such damage as the defendant has shown from the failure of the plaintiff to deliver water.''

We are of the opinion that the foregoing holding of the Supreme Court is controlling here. The water of the Kings River to be apportioned and diverted by the water master was not the water of Kings River Water Association, but the water of its several members. Each member had the right to its water and the right to receive it at any time during any year, the quantity depending on the total flow of the Kings River and the month in which delivery was made. The right to receive water was a continuing one as was the obligation to measure and divert it. Assessments were levied once each year and were usually made payable in two instalments at fixed times and in definite amounts. The payments were not made for the water but for what may be termed the overhead and operating expenses of the Kings River Water Association. Defendant in paying its assessments was not paying for water. It owned its water and did not have to purchase it. It paid for services rendered by the Kings River Water Association. The payments were periodical. The obligation to measure and divert water was continual. Under the authorities cited we must conclude that: ''the furnishing of the water . . . could not be dependent upon or concurrent with the payment to be made''; that ''the covenants are not dependent or concurrent''; and that as the ''covenants of the respective parties are to be performed at different times they are held to be independent and the breach by one party of his covenant does not excuse the performance by the other of

his covenant or relieve him of liability for damages for a breach thereof''. (*Fresno Canal & Irr. Co.* v. *Perrin, supra.*)

The same reasoning applies to the covenant to prosecute or defend lawsuits. So doing is not a condition precedent to the obligation of defendant to pay its assessments. In fact it is clear that the ordinary assessments are to pay the ordinary expenses of the Kings River Water Association. It is also clear that assessments levied to pay the expenses of any litigation are not contingent in their nature. They are to be paid in order to enable the association or part of its members to prosecute or defend lawsuits. The services may be rendered in the future. The assessments may be levied to meet the cost of future services and are not limited to the payment for services concurrently performed or fully rendered.

■ If, as we believe, the three cases cited are controlling here, the special defenses we are considering are not available to defendant in the action to collect delinquent assessments, where, as here, damages for alleged breach of contract are not asserted by way of counterclaim or cross-complaint. The findings on those defenses were not responsive to any issue material to the case. It follows that those findings may be disregarded and may be treated as surplusage. Therefore, we are not required to examine the record to determine the sufficiency of their evidentiary support. Nor are we required to construe the two contracts in question here to determine whether defendant is entitled to its quota of water measured at the measuring station near Piedra subject to depletion or increment during its flow down the river or whether its proportion of the water must be measured at the intake of its distributing system located about thirty miles down the river from Piedra. These issues cannot be decided under the pleadings in the present case.

■ The final question raised by defendant for our determination is the bar of the statute of limitations to portions of the items composing plaintiff's demand.

The trial court found under one cause of action of the complaint that defendant was indebted to plaintiff on an open book account with the last payment made by defendant on November 7, 1932. The action was filed July 19, 1934. In holding that under such circumstances the bar of the statute of limitations had not accrued, it has been said:

"The account contained charges for services in 1923; the action was brought in January, 1932. Because many of the charges were more than four years old, appellant claims they were barred by the provisions of section 337 of the Code of Civil Procedure. His argument is to the effect that as each service was completed a cause of action arose for the recovery of compensation therefor and was barred four years thereafter if the charges were contained in a book account, otherwise in two years. This, we think, presents a theory in conflict with the decided cases. A book account was placed upon the same basis as a mutual open and current account by the 1917 amendment of section 337 of the Code of Civil Procedure. (*Furlow Pressed Brick Co.* v. *Balboa etc. Co.,* 186 Cal. 754, 763 [200 Pac. 625]; *Bailey* v. *Hoffman,* 99 Cal. App. 347 [278 Pac. 498].) The statute commences to run from the date of the last entry in the account. Such is the settled law in this state. The cause of action is upon the account, not upon the separate charges which enter into it. When, therefore, four years have run from the date of the last entry in the account, action on the entire account is barred, but the action is not barred piecemeal as to the several items, because in an action on the book account they are all to be regarded as a part of one entire account and cause of action." (*Egan* v. *Bishop,* 8 Cal. App. (2d) 119 [47 Pac. (2d) 500].)

It is therefore apparent that none of the special defenses interposed by defendant can prevail in this action in the form in which they are plead.

The judgment is affirmed.

Jennings, J., concurred.

Barnard, P. J., being disqualified, did not participate herein.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1937.