[Civ. No. 16086. First Dist., Div. Two. May 31, 1955.]

ALEXANDRINE VERDIER, Appellant, v. PAUL
VERDIER, Respondent.

John D. Martin, Heller, Ehrman, White & McAuliffe and F. Whitney Tenney for Appellant.

Morgan J. Doyle, Alfred F. Breslauer, Alvin D. McNeil and Tom B. Markley for Respondent.

DRAPER, J. pro tem.*—Plaintiff and defendant were married in 1918. They executed a separation agreement January 10, 1937, by which "each now agrees from this time forward to live separate and apart from the other, and each agrees not to molest the other." Defendant agreed to pay plaintiff $500 per month and "in case his income increases," an additional amount of half of such increase.

By 1946, defendant husband was in default in performance of that agreement. By "Agreement Amending Contract" and "Agreement and Receipt," both executed May 11, 1946, the monthly payments were reduced to $400 from May 1, 1946, and the wife was paid $15,000 in cash in satisfaction of all then due under the 1937 agreement and for traveling expenses, attorneys' fees and costs.

The present action was commenced October 2, 1948. Plaintiff alleged that the 1946 amendment was procured by false and fraudulent representations of defendant, and that after July of 1948 defendant had failed to pay her any amount, under the agreement or otherwise, despite his financial ability to do so. The allegations of fraud were directed at the 1946 amendment only. The 1937 agreement was not attacked.

By order to show cause, Mrs. Verdier sought support and other allowances pendente lite. Her request was denied on the ground that, since she did not seek to set aside the original agreement, she was limited to recovery upon it and could not seek relief under Civil Code, section 137.

The Supreme Court, in *Verdier* v. *Verdier,* 36 Cal.2d 241 [223 P.2d 214], held that it is performance, rather than mere existence, of a separation agreement which may bar

*Assigned by Chairman of Judicial Council.

recovery outside the agreement. Thus the complaint, which alleged the husband's ability to pay and his failure to do so, was "consistent with either an action to enforce the 1937 contract as such or an action for relief under section 137" (p. 248). If she were in fact seeking to maintain both forms of action, she could be compelled to elect. The order denying relief pendente lite was reversed, and the case remanded for further proceedings.

These proceedings were many and varied. By March 4, 1952, at least three appeals and one proceeding in prohibition were pending in the District Court of Appeal. On that date, counsel stipulated for early trial of the present action, and agreed that the several appellate proceedings be vacated or "held in abeyance" until conclusion of trial. They agreed also that plaintiff's election of remedies could be deferred.

Following a pretrial conference April 3, 1952, trial began April 15 and concluded May 7. The court found that the 1946 amendment was not procured by fraud, that defendant had fully performed the separation agreement as amended in 1946, and that plaintiff had breached the agreement by molestation of defendant. It therefore concluded that plaintiff was not entitled to rescind the 1946 amendment; that since defendant had not breached the agreement plaintiff had shown no failure to provide and could not recover under section 137; that plaintiff's breach terminated the agreement and that defendant was not obligated to make any further payments thereunder. Defendant had paid into court $400 per month from November 1, 1948, onward. The trial court, upon the theory that Mrs. Verdier's breach terminated the agreement, ordered these sums returned to defendant. Plaintiff appeals.

Appellant wife asserts that the evidence is insufficient to sustain certain of the findings. In general, it may be observed that there is quite as much conflict in the evidence as in the married life of the parties.

However, we discuss briefly the evidence on the allegation that the 1946 amendment was procured by fraudulent misrepresentation.

The parties agree that to establish her case, wife must show a material representation which was false, was known by husband to be untrue, was made to induce reliance by wife, and was in fact relied upon by her. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].)

Appellant emphasizes specific representations of her hus-

band's income and expenses, made in 1942. But the evidence shows that, in 1942, the representations as to income were true, and there is no evidence as to the 1942 expenses.

The 1946 negotiations were conducted, for the husband, wholly by J. R. Bearwald, who died in 1947. He stated that husband could not afford to pay $500 per month, and that if wife would not accept the $400 figure, she could sue. The evidence shows that the husband's income increased substantially in 1945 and 1946 over 1942, but there is at most a conflict as to whether any representation to the contrary was made. Also, husband was critically ill in 1945 and 1946, and incurred large hospital and medical expenses. On the whole record, the trial court could reasonably conclude that the evidence was insufficient to show that Bearwald's representations were relied upon, that they were untrue, or that they were more than mere expressions of opinion.

It is true that the wife's allowance under the amended agreement seems disproportionate to husband's income of 1946 and later years. However, considering all the evidence as to the circumstances in May of 1946, we cannot say that the finding is not sustained.

Appellant wife also urges that the 1946 amendment falls because of husband's failure to secure an agreed guaranty. Husband agreed that Bearwald and Mrs. de Tessan should give written guaranties of his performance of the amended agreement. No guaranty was ever given by Bearwald. But there is direct evidence of express waiver of this guaranty by Mrs. Verdier. It seems clear that the trial court accepted this testimony as true.

The evidence is also sufficient to sustain the trial court's finding that Mr. Verdier had performed the agreement on his part.

Thus the trial court found against the wife on both of the grounds which the Supreme Court had held to be stated in her complaint. She could not recover under the 1937 agreement because she could not show the 1946 amendment to have been procured by fraud. Since the husband had fully performed the separation agreement, as amended, there was no wilful failure to provide. This was the only ground discussed by the Supreme Court as a basis for separate maintenance without limitation to the amount provided by the agreement. It follows that the wife's only remaining right to support is to $400 per month under the amended agreement.

Appellant does not dispute this reasoning if her rights under section 137 are limited to those arising from wilful failure of her husband to provide for her. She asserts, however, that under one of the clauses of section 137 she is entitled, if she can show any ground for divorce, to a decree of separate maintenance, providing for a support allowance not limited by the terms of the separation agreement.

Section 137 allows separate maintenance in two situations. One arises "when the husband wilfully fails to provide for the wife." This is the clause considered by the Supreme Court in *Verdier* v. *Verdier*, 36 Cal.2d 241, *supra*. The other arises when either spouse "wilfully deserts" the other, or when either "has any cause of action for divorce as provided in section 92 of this code."

The wife argues that a decree of separate maintenance, based upon showing of a ground for divorce other than failure to provide, could award support beyond that provided in the agreement. If this argument is valid, a point which we expressly refrain from deciding, it can apply here only if such ground is pleaded. ■ As in divorce cases (16 Cal.Jur.2d 363), the complaint must set forth facts showing the grounds for divorce relied upon as a basis for separate maintenance. (*Helpling* v. *Helpling*, 50 Cal.App. 676, 680 [195 P. 715].)

■ The complaint here alleges no facts to show any ground for divorce save wilful failure to provide. The wife points to an allegation which narrates the marriage, the financial circumstances of the parties, and the making of the 1937 agreement, and then sets forth that "Plaintiff had ample grounds for divorce at said time but acceded to Monsieur Verdier's desire not to divorce." Certainly this very general allegation, specifically directed to a period 11 years before the complaint was filed, cannot take the place of a present allegation of specific grounds.

On the last day of trial, the wife moved to amend her complaint to allege adultery, habitual intemperance and extreme cruelty. This was after the trial court had announced its views of the effect of all the evidence. The motion was accompanied by a request for continuance of the trial. The motion to amend was denied.

■ The allowance or rejection of a motion to amend is within the sound discretion of the trial court. (*Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519, 540 [256 P.2d 677].) ■ Here the action had been commenced October 2, 1948. The complaint had been construed by the Supreme Court

in 1950. Three amended complaints had been filed after that decision. At pretrial conference the trial court had indicated its view that evidence could be admitted only as to grounds pleaded. The trial required more than three weeks. Under these circumstances, the motion of May 7, 1952 (the last day of trial), to amend the third amended complaint was most tardy. The order denying the motion was proper. (*Westwood Temple* v. *Emanuel. Center*, 98 Cal.App.2d 755, 764 [221 P.2d 146].)

But plaintiff also urges that the stipulation of March 4, 1952, authorizes her to assert these additional grounds. As already pointed out, the litigation by then had reached a remarkable procedural snarl. The parties stipulated that all matters then pending in the District Court of Appeal should "go off calendar" and "remain in abeyance." They also agreed to early trial of the present case. Since a principal issue involved in the appeals was plaintiff's election between her cause of action for rescission of the 1946 amendment (and consequent enforcement of the original agreement) and that for separate maintenance, the stipulation provided:

"5. In the trial of said action numbered 380328, the said Superior Court may try both the issues raised by the cause of action for rescission of the 1946 agreement and enforcement of the 1937 agreement included in the pleadings therein and the relief sought pursuant to Section 137, Civil Code of the State of California. It is expressly stipulated that the said Court may afford plaintiff any relief available under Section 137 Civil Code of the State of California, or for relief under contract rescission consistent with the evidence adduced at said trial.

"6. In the event that the Court finds in favor of plaintiff on both the cause of action for rescission of contract and for relief under section 137, Civil Code of the State of California, then after such decision, plaintiff may elect whether she wishes to avail herself of the remedies available to her under Section 137, Civil Code of the State of California or for the appropriate relief upon rescission of the contract."

■ There can be no question that this stipulation was entered into in the light of the Supreme Court decision in this case. The stipulation appears to have been made in the course of a hearing before the District Court of Appeal. Portions of the transcript of that hearing were read at the trial, and support the view that the parties intended only to resolve

their procedural impasse by deferring plaintiff's election, if one became necessary, until conclusion of trial.

Clearly it was to express this intent fully, rather than to broaden the pleadings in the present action, that the parties included their reference to the relief to be awarded. We cannot construe the reference to "any relief available under Section 137" as broadening the issues raised by the pleadings. Rather, the parties were avoiding all the problems raised by the judgment for defendant after sustaining of demurrer to the third amended complaint and agreeing to go to trial on that complaint. The stipulation in no way provides for any amendment of the pleadings, nor does it deprive the trial court of its power to restrict such amendment.

■ Appellant wife next argues that the trial court erred in denying her future payments under the support agreement as amended, and in ordering return to respondent husband of the support payments deposited in court by him after commencement of this action.

This portion of the judgment is based in part upon a finding that the wife had "waived" all her rights to the amounts deposited in court, as well as to all future support, by refusing to accept payments tendered by her husband during pendency of this action. Whether it be deemed a finding or a conclusion, this ruling cannot be supported.

The record is clear that there was a very real dispute between the parties as to whether respondent was in default in certain payments due in 1948. These payments had been paid to the sheriff, under writ of attachment, rather than to the wife. When the full amount of the writ had been paid, respondent tendered to his wife payment for the sum next due. Upon advice of counsel, she refused that payment and those later offered. Her announced purpose was to avoid waiver of her rights under the claimed default of her husband. The mere fact that she did not prevail upon this claim does not deprive her of her right to the support provided by the agreement.

■ Waiver (as distinguished from estoppel, which is not claimed here) requires an actual intent to relinquish a right. (See cases collected at 25 Cal.Jur. 926 et seq.) Clear showing of the intent to relinquish must be made, and doubtful cases will be decided against a waiver. (*Greninger* v. *Fischer*, 81 Cal.App.2d 549 [184 P.2d 694].) ■ Here it is not even suggested that Mrs. Verdier ever intended to relinquish her rights.

Mere failure to accept a tender does not discharge the obligation to pay money. (*Redpath* v. *Evening Express Co.*, 4 Cal.App. 361, 367 [88 P. 287].) An offer to pay extinguishes the obligation only if the amount is deposited in the name of the creditor (Civ. Code, § 1500), and such deposit must be unconditional, and so made that the deposit becomes at once the property of the creditor. (*Segno* v. *Segno*, 175 Cal. 743 [167 P. 285]; *Righetti* v. *Righetti*, 5 Cal.App. 249 [90 P. 50].) These requirements were not met here.

The second basis of the court's ruling on this issue is grounded in its finding that Mrs. Verdier had "molested" her husband. The wife does not directly attack this finding of fact. In any event, it is sustained by substantial evidence.

The real question is the effect of such molestation upon Mr. Verdier's obligation. The trial court found that the wife "is not entitled to have or receive . . . any of the moneys . . . deposited with (the clerk) . . . or any money whatsoever." The conclusion of law was that all her rights under the separation agreement "have terminated and come to an end."

The result is that Mrs. Verdier is denied all support of any kind from November 1, 1948, and there is refunded to the husband $286 deposited in court by him in November, 1948, and $400 similarly deposited each month thereafter.

As to the payments falling due before January 18, 1952, the findings themselves negative the judgment. Although the court found that molestation began in 1946, the specific finding is that the contract was "fully and finally and completely terminated and at an end by the 19th day of January 1952." No authority is suggested for a holding that a "termination" in January 1952 has the retrospective effect of excusing payment of support which fell due in and after November 1948. More than $15,200 was deposited in court after commencement of this action and before the date of breach as found. It seems axiomatic that these payments were not affected, and that they should not have been refunded to respondent, but should be paid to appellant.

But we have concluded that the breach of the molestation clause does not excuse any performance by the husband of his agreement to pay support money.

The issue, of course, turns upon construction of the agreement. There is no extrinsic evidence in aid of construction, and the question therefore is one of law for this court. (*Estate of Wunderle*, 30 Cal.2d 274, 280 [181 P.2d 874]; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819, 926 [167

334

P.2d 719, 164 A.L.R. 685].) ▮▮▮ The 1937 contract was brief. Its first paragraph is:

"Paul Verdier and Alexandrine Verdier, the signers of this agreement, are husband and wife; and each now agrees from this time forward to live separate and apart from the other, and each agrees not to molest the other."

This is the only reference to molestation. The 1946 amendment makes no reference to molestation, amends only other portions of the agreement, and in no way modifies the paragraph quoted above.

Is the effect of this agreement such that Mrs. Verdier's "molestation" of her husband excuses him from all further payment of the agreed support? We think not.

It should be noted that, in addition to holding that Mrs. Verdier's breach bars all her rights under the agreement, the court found that the same breach caused damage to Mr. Verdier in the sum of $500. Judgment for this amount was awarded to him on his cross-complaint.

Whether breach of the agreement not to molest bars Mrs. Verdier's recovery of agreed support payments raises the question whether the two covenants are dependent or independent. ▮▮▮ If the covenants are independent, breach of one does not excuse performance of the other. (*Kaupke* v. *Lemoore Canal & Irr. Co.*, 20 Cal.App.2d 554 [67 P.2d 407].) The question is wholly one of construction of the agreement. ▮▮▮ The general rule is "to make the meaning and intention of the parties, collected from all the parts of the instrument rather than from a few technical expressions, the guide in determining the character and force of their respective undertakings." (*Musto* v. *Grosjean*, 208 Cal. 453, 459-460 [281 P. 1022].)

▮▮▮ To construe covenants as dependent is to work a forfeiture as to one party, and no obligation of a contract is to be regarded as a condition precedent unless made so by express terms or necessary implication. Where a breach is partial and is "capable of being fully compensated," the strong tendency is to regard it as insufficient to constitute a defense. (*Redpath* v. *Evening Express Co., supra,* 4 Cal.App. 361.)

We have found no California decision directly in point here. In other jurisdictions, however, the pronounced tendency is to regard the provision against molestation and that for payment of support as being independent covenants. This rule is often applied even where the language of the agreement indicates

dependency of the covenants. (See cases collected in 160 A.L.R. 473, et seq.)

In the case at bar, there is no language in the agreement indicating any intention that performance by the wife of the covenant against molestation is a condition precedent to or concurrent with performance of his obligation to pay. Rather, the agreement not to molest appears but incidental to, or an elaboration of, the agreement to live separate and apart.

It is difficult to conclude that a molestation compensable by $500 damages is so serious a breach as to deprive the offending wife of support which, from commencement of this action to the present, amounts to more than $31,000, and which is continuing to run at the rate of $400 per month.

It would seem that the contract language should be clear to compel such a result. Here there is not the barest recital of any such intent.

Respondent contends that the cases from other jurisdictions, referred to above, are distingiushable on the ground that no statute comparable to Civil Code, section 175, was there involved. He reads these decisions as being based upon a duty of support which is negatived, in California, by the fact that the parties are living apart. We do not so read the decisions. In any event, the argument overlooks the fact that the parties here are living apart only because of the agreement, which in turn was induced by his promise to pay support money to his wife.

Respondent cites four California cases for his view that he is relieved of all duty to comply with his agreement for support. They are not in point.

In *Smith* v. *Smith*, 7 Cal.App.2d 271 [46 P.2d 232], the parties made a property settlement agreement in 1923. It provided for payment of $250 per month to the wife. In 1928, they amended this agreement to provide that the payments be increased from $250 to $300 per month. Wife agreed to refrain from molesting or interfering with husband. The amendment specifically provided that if wife breached this covenant, the amendment should be of no further force or effect, the rights of the parties thereafter would be governed by the 1923 agreement only, and husband would have credit upon that agreement for all added payments made by him under the 1928 amendment. The wife violated her covenant, and the court enforced the amendment agreement by relegating her to her rights under the original agreement.

There was no possible room for doubt in the construction

of the Smith agreement, which unequivocally provided for relinquishment of certain benefits upon breach. No such provision is remotely suggested by the language of the Verdier agreement, and we hold that there is no room to imply any such provision.

The agreement in *Forsland* v. *Forsland*, 46 Cal.App. 405 [189 P. 327], was even clearer. There husband had deposited $1,000 in escrow, to be paid to his wife if she did not molest him or any of his employees for a fixed period. That agreement is of no aid in construing the Verdier contract.

*Pezzoni* v. *Pezzoni*, 38 Cal.App. 209 [175 P. 801], presents the reverse of the common situation. There the husband agreed to go to Switzerland and that he "at no time hereafter will ever molest or approach (his wife) against her will." She paid his fare plus funds for clothing and pocket money, and agreed to pay him $25 per month, all specifically "in consideration of Victor keeping to the above agreement." Victor went to Switzerland, but returned to California and, after a time, sued his wife for the monthly payments of $25. The court held that he had breached his agreement, and could not recover. Here again, the agreement was clear and specific. While there was no express provision that his return from Switzerland would terminate his right to payments, the implication of this condition was necessitated by the language of the agreement.

*Sharon* v. *Sharon*, 68 Cal. 29 [8 P. 614], has no bearing whatever on the issue here.

For the reasons given above, we are satisfied that Mrs. Verdier's covenant not to molest is independent of Mr. Verdier's agreement to pay. The contract is silent upon this point. We see no reason to imply a condition not expressed by the parties. She is entitled to payment of $400 per month under the amended separation agreement.

Appellant assigns as error the refusal of the trial court to enjoin respondent from continuing prosecution of a divorce action commenced in France. There is a conflict of evidence as to the domicile and citizenship of one of the parties at the time that action was filed. The pleadings raise no issue as to such injunction. Apparently, it was sought, at trial, solely as an incident to other relief. In the light of our conclusion that judgment upon the complaint must be for respondent, there is nothing to support such an injunction.

Appellant also asserts reversible error in the offering of improper evidence. The voluminous record does contain much

that should not have been presented, but it is difficult to say which counsel outdid the other in presenting it. The trial judge attempted to limit these activities, asked both sides to "desist from scurrilous statements," and stated that he would ignore the irrelevant matters. Even without these statements, it would be presumed in this nonjury trial that the findings are not based on incompetent evidence where there is competent evidence to support them. (*Southern Calif. Jockey Club* v. *California Horse Racing Board,* 36 Cal.2d 167, 176 [223 P.2d 1].).

Apparently as a portion of this same contention, appellant complains that she waived her privilege and permitted testimony by her previous attorney. But this waiver was made by appellant in open court and joined in by her trial counsel. Certainly she cannot disavow the waiver on appeal.

The judgment is affirmed insofar as it denies relief to appellant upon each of the theories of her complaint, and in its award of damages to respondent upon the cross-complaint. The portions of the judgment determining that appellant's rights to support under the amended separation agreement are terminated, and ordering return to respondent of the sums deposited in court, are reversed. In the interests of justice, costs on appeal are awarded to appellant.

The case is remanded to the trial court, with directions to modify its findings, conclusion and judgment in accordance with the views herein expressed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied June 30, 1955, and the petitions of appellant and respondent for a hearing by the Supreme Court were denied July 27, 1955.