## Moore v. Moore

*Edwin B. Barnett, Robert B. Durham, Jr.,* and *Strong, Barnett & Grasberger,* for plaintiff.

*Alexander Schambam* and *Henry Wessel,* for defendant.

STERN, J., December 2, 1965. — Two suits were brought by a divorced wife for the failure of her former husband to comply with financial obligations

under a written separation agreement. The issues are the same in both; only different periods of time are involved. Accordingly, both actions were tried together and will be treated as one herein.

Plaintiff, Dorothy H. Moore, and defendant, William J. Moore, were married on February 13, 1932. Sometime thereafter, the parties decided that defendant-husband should go back to school, with a view that he might have "more to offer" to a prospective employer. Partly by reason of the plaintiff-wife's earnings from various types of employment, the defendant-husband was able to finish high school and eventually to complete an engineering course at Drexel Institute of Technology.

Subsequently, differences arose between the parties, terminating in the separation agreement of March 25, 1963, the subject matter of this suit. That agreement contained, inter alia, covenants providing for the husband's responsibility for support payments and other financial commitments, and a covenant that neither party should molest the other.

Specifically, paragraph 1 in the agreement states:

"Each of the parties hereto recognizes the right of the other from and after the date of the execution of this agreement to live separate and apart from the other spouse entirely free from any interference, molestation, authority and control of the other as fully as if he or she were single and unmarried, and each of the parties does hereby covenant and agree that he and she shall not molest or interfere with each other in any way hereafter".

Paragraph 12 of the same agreement in its pertinent part, requires $60 weekly support to be paid to the former wife. Paragraph 13 provides that the husband-defendant is to pay the premiums on assigned insurance policies, and in the event that he fails to do so and the wife-plaintiff is required to pay them in order

to keep the policies in force, the wife is to be reimbursed. The husband also agreed to pay outstanding loans on such policies when due. The agreement further provided that the wife would sue for a divorce from her husband within one year, but if she should fail to diligently prosecute such divorce action, certain assignments by the husband benefiting her would be returned to him.

After their separation in March of 1963, the defendant-husband went to live with the parties' son. On November 20, 1963, the plaintiff-wife secured a divorce from defendant, and six days later defendant remarried, the second wife having the same Christian name, Dorothy E. Moore, as plaintiff herein. Thereafter, defendant moved into the home of his second wife in Huntingdon Valley where he continues to reside. Defendant is presently earning $18,000 a year in a supervisory position with the Atlantic Refining Company, and he and his present wife have been able to afford vacations to Montego and Hot Springs, Va., and to maintain a summer home in Stone Harbor, N. J.

Plaintiff has not remarried. In 1955, she suffered a mental breakdown, and in February 1965, she was involved in an accident, an incident of which was her confinement in bed for some time.

On April 15, 1964, the former husband stopped making payments under the aforesaid agreement, contending that he is no longer obliged to do so, since plaintiff molested and interfered with him in violation of the agreement's antimolestation provision.

The issues, then, which we must resolve are whether the wife molested defendant and, if we find that she did, what is the effect of such molestation upon the separation agreement?

From April 1963 until early 1965, plaintiff made at least six telephone calls to defendant's place of

business and, not reaching defendant there, she spoke with defendant's business associates. Plaintiff attempted to excuse this conduct by testifying that she called to inquire about Blue Cross benefits, problems involving repairs to the house in which she and her husband had resided together prior to their separation, and other such seemingly legitimate problems. However, the flaw in this explanation is that she conversed with his associates not about the above listed matters, but about purely personal things involving plaintiff and defendant and about the latter's remarriage.

Moreover, in addition to the calls to defendant's place of business, plaintiff made numerous telephone calls under various excuses and pretexts to the places where defendant resided when he lived with his son and when later he resided with his second wife; on a few such occasions, she made as many as 10 calls in one evening. In the course of these calls, plaintiff berated defendant and spoke disparagingly of him no matter when talking directly to defendant or when speaking to the second Mrs. Moore.

We are of the opinion that the frequency and character of the calls, the places at which they were received and the times when and the persons to whom spoken, constituted molestation and interference within the connotation of the pertinent provision of the aforesaid agreement.

We now turn to the effect of plaintiff's breach of the agreement's antimolestation clause on defendant's financial obligations under the terms of the separation agreement.

This issue was the subject of an annotation appearing in 160 A. L. R. 471. That commentary demonstrates that most jurisdictions consider an antimolestation covenant in a separation agreement as *independent* rather than *dependent* on other covenants in the agreement requiring support. Thus, in most juris-

dictions, where a wife sues for support, the fact that she *"molested"* her husband will not deprive her of the support: Hughes v. Burke, 167 Md. 472, 175 Atl. 335 (1934); Stern v. Stern, 112 N. J. Eq. 8, 163 Atl. 149 (affirmed upon opinion below in 113 N. J. Eq. 185, 166 Atl. 89 (1933); Verdier v. Verdier, 133 Cal. App. 2d 325, 284 P. 2d 94 (1955); Borax v. Borax, 4 N. Y. 2d 113, 149 N. E. 2d 326 (1958), and Shedler v. Shedler, 32 N. Y. Misc. 2d 290, 223 N. Y. S. 2d 363 (1961), affirmed 15 App. Div. (N. Y.) 2d 810, 225 N. Y. S. 2d 495 (1961), affirmed 12 N. Y. 2d 828, 187 N. E. 2d 361 (1962).

In Pennsylvania, there is a paucity of cases on this subject. A relatively early case to deal with the question was Shimp v. Gray, 41 Pa. Superior Ct. 542, 546 (1910). There, in consideration of support, the wife covenanted in specific terms not to molest the husband. The court ruled that the husband's affidavit of defense pleading molestation by the wife was sufficient to preclude the wife from having a judgment on the pleadings. The court dealt with the relationship of the covenants in the agreement as follows:

"Considerable stress has been laid upon the proposition that plaintiff's right is conditioned upon the question whether the covenants are dependent or independent, but to our mind it is not material in this case, and the subtle distinctions that are at times given between dependent and independent covenants are not of any significance in this case. As said by the court below, 'If dependent, the plaintiff cannot recover; if independent, the defendant has a right to set off against the plaintiff's claim the damages he has suffered by the breach of his covenant against molestation. There is therefore nothing, either in the state of the law or in the particular facts of the case, which could in any way modify the general law of set-off. . . .' Whether covenants are dependent, concur-

rent or mutual depends on the intention of the parties ascertained by the application to the context of rules of interpretation, from which alone the fact is to be extracted. . . ." (cases cited therein).

It is clear that the Shimp case does not face squarely the issue at hand. This court is not asked to enter a judgment on the pleadings; we are rather required to rule on the merits. Indeed, it is vital to resolve the issue which the Shimp case did not determine: whether the covenants are to be construed as dependent or independent, predicating our conclusions on the terminology employed by and the intent to be deduced from the entire agreement. In our case, as in the cited Shimp case, "The defendant has averred that, which if proved before a jury," (or, as here, a trial judge sitting as judge and jury), "will entitle him to damages for the wife's breach of her covenant against molestation".

Defendant's brief cites Wagner v. Wagner, 158 Pa. Superior Ct. 93 (1945), apparently in support of his position. We are inclined to the belief that that case does not help him; nor do the facts and circumstance there square or coalesce with those presented in the proceedings before us. The Wagner case involved a written agreement of separation, supplemented by an oral contemporaneous agreement, which modified the former written agreement by increasing monthly payments from husband to wife from $100 to $110 a month on the express condition that the wife would refrain and desist from acts of molestation of the husband. The antimolestation provision, it appears, had not been included in the original written agreement.

Plaintiff's rule for judgment was discharged, the lower court stating: "There can be no doubt that a written agreement may be subsequently modified by a parol agreement". See Wagner v. Wagner, 54 Dauph. 206, 209. At a subsequent trial on the merits, the

lower court clearly and bluntly stated the issue to be "whether the modified oral agreement was to pay the sum of $110, instead of $100 a month, without any conditions, or whether it was upon the condition that $110 would be paid provided the plaintiff should not molest the defendant". The case was allowed to go to the jury, which found for defendant. A motion for new trial filed by plaintiff was discharged by the lower court, and on appeal it was affirmed by the appellate court. See Wagner v. Wagner, 158 Pa. Superior Ct. 93 (1945). That case, it should be noted, involved questions concerning the admissibility of evidence and was resolved on the jury's finding that the modified agreement conditioned the payment of the monthly stipend on the wife's explicit agreement to refrain and desist from further molestation of the husband. This condition, the jury found, the wife had breached.

In the light of the testimony in the Wagner case, the jury there, we believe, rightly concluded and was amply supported in finding that the agreement to pay $110 was made in consideration of, and conditioned upon, the wife's promise to desist from molestation of her husband. There is no similar testimony in our case.

In contradistinction, the instant covenants contain no language expressly conditioning the making of payments on the wife's compliance with the antimolestation clause.

A half a century ago, Judge Sulzberger of the Philadelphia Common Pleas Court in A., Trustee for B., v. C., 18 Dist. R. 88, 90 (1908), involving a wife's alleged breach of an antimolestation clause in a separation agreement declared:

"In Fearon v. The Earl of Aylesford, L. R., 14 Queen's Bench Division, 792, it was held that, although there had been molestation by the wife, that would not relieve the defendant from being liable on the claim, and that such covenants must be construed as

independent covenants *in the absence of any express terms making them dependent.* This doctrine seems to us to be the true one; because the husband's duty of support ought not to be frittered away by subtle distinctions, whose application would have the effect to drive the wife to crime or throw her upon the public for support." (Italics supplied).

The only language found in our agreement conceivably bearing on the issue of the interdependence of the clauses is the recital: "Now therefore, in consideration of the promises and of the mutual covenants and undertakings of the parties hereto, and intending to be legally bound hereby, the parties mutually promise and agree".

The words "intending to be legally bound" are included in order to validate the agreement as a whole, in case it is attacked for lack of consideration: 33 PS §6. The phrase has no relevance to the issue of whether the clauses are interdependent.

Likewise, the other introductory language does not establish the interdependence of the succeeding provisions. In Shure v. Shure, 33 D. & C. 352, 356 (1938), Judge Carr observed: "It is true that the covenants of each party are in consideration of the covenants of the other, but this does not make them dependent . . .

"The distinctions between covenants and conditions are often extremely subtle. We must depend less on artificial rules than on the application of good sense and sound equity to the object and spirit of the contract, for the boldest generalizations will be found subject to many exceptions. We may safely say, however, that when mutual covenants go to the whole consideration they may be held reciprocal, but when a covenant goes only to a part of the consideration and a breach may be fully compensated in damages, it is independent: Obermyer v. Nichols, 6 Binn. 159. Forfeitures, being regarded with disfavor, are to be en-

forced only when the language of an agreement compels, and not as here where the breach, if one occurred, readily admits of recompense and restoration."

Moreover, the breach of the molestation clause in the case at hand lends itself to a finding of damages as an adequate remedy. We are not inclined to an interpretation creating a forfeiture where defendant can be made whole for the damages due to the alleged harassment, annoyance and molestation.

In Stern v. Stern, supra (N. J.), the agreement contained a recital similar to the one in the instant case: "Whereas the parties hereto have agreed and do hereby consent and agree to live separate and apart from each other in the future and during and throughout the period of their natural lives, *on and in accordance with the terms, covenants and conditions herein contained* . . ." The husband sought to repudiate the agreement because of the wife's molestation. The court construed the italics as a mere premise to the covenants and that they did not establish the dependence of the support on the antimolestation provision. The court said: "The husband's specific covenant to pay literally is unconditional; it is consistent with the recital and the recital implies no limitation".

In the more recent New York case dealing with antimolestation covenants (Shedler v. Shedler, supra), the agreement contained an antimolestation clause and provided that a default under any part of the agreement would be considered a default of the entire agreement. The New York Court of Appeals, affirming the lower court's decision, held, in a suit by the wife to recover payments, that the husband's defense that she breached the covenant against molestation was insufficient in law to relieve the husband from supporting his wife.

The language in the provisions of that agreement caused them to be far more dependent than that used

in the agreement in the instant matter. Yet, the lower court held the clauses to be independent, citing Lindey: Separation Agreements and Ante-Nuptial Contracts, (rev. ed. 1953), pp. 108-09: "A breach of the covenant against molestation is no defense to a suit to enforce payment under a separation agreement. The wife's covenant not to molest, and the husband's covenant to pay, are deemed to be independent".

Plaintiff in this case is 51 years of age. Under the separation agreement, she is to receive $60 a week. This amount, extrapolated over her life expectancy, is somewhat in excess of $50,000. Defendant would seek to have that expectancy expunged because of her telephone calls.

Of course, this is not to state that the former wife's conduct can be regarded with approval or condonation. Yet, active resentment on the part of an estranged woman is not uncommon where her former husband has remarried and is successfully pursuing life anew.

It is the court's position that an extreme injustice would be done to plaintiff if she were to lose her right to support because of the telephone calls which she made. Such a result would be tantamount to granting damages to the harassed husband in excess of $50,000. In light of the best of defendant's evidence, that would be disproportionate to the inconvenience, annoyance and possible embarrassment alleged to have been suffered by him.

In Verdier v. Verdier, 133 Cal. 2d 325, 284 P. 2d 94, (1955), the first paragraph of the agreement provided:

"The signers of this agreement, are husband and wife; and each now agrees from this time forward to live separate and apart from the other, and each agrees not to molest the other."

In that case, the wife breached the antimolestation clause. The court ruled that she was entitled to con-

tinue to receive support. The husband, on the other hand, was given $500 as damages because of the alleged molestation. This, we believe to be a just, reasonable and realistic decision.

We, therefore, conclude and find that the injury done by the former wife to the husband was not sufficient to deprive her of support for the rest of her life. Accordingly, a set off of $500 due to the molestation would be reasonable and just under the circumstances, we believe, and is allowed against the arrearages owed to plaintiff. The separation agreement in its entirety stands, and shall continue in full effect as heretofore.

Plaintiff is entitled to $2,460, representing weekly support payments which defendant did not make between April 17, 1964, and January 22, 1965, and, in addition, $674.12 reimbursement for insurance premiums and unpaid interest on a life insurance policy loan advanced by plaintiff, or a total of $3,134.12, against which a setoff of $500 is allowed. Therefore, a finding is entered in favor of plaintiff in the sum of $2,634.12 with interest.