397 F.2d 237
 Jean J. MINTHORNE and Melanie Minthorne, husband and wife, Appellants and Cross-Appellees,
v.
The SEEBURG CORPORATION, a corporation; Seeburg Distributing Company, a corporation, Appellees and Cross-Appellants.
 No. 21639.
 United States Court of Appeals Ninth Circuit.
 June 21, 1968.
 Rehearing Denied August 2, 1968.
 
 Coit I. Hughes (argued), Harry A. Stewart, Jr., of Hughes & Hughes, Phoenix, Ariz., for appellants.
 John P. Frank (argued), of Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., John L. Cole, of Loeb & Loeb, Los Angeles, Cal., for appellees.
 Before POPE, MERRILL and CARTER, Circuit Judges.
 JAMES M. CARTER, Circuit Judge.
 
 
 1
 These appeals grow out of an action by Seeburg Corporation, a corporation and Seeburg Distributing Company, a corporation, (hereafter collectively "Seeburg").[1] The defendants were Jean J. Minthorne and Melanie Minthorne, (hereafter "Minthorne"), and others not involved in this appeal. The action was on contract for indemnification. Jurisdiction was based on diversity of citizenship and a demand in excess of $10,000.00.
 
 
 2
 Minthorne counter-claimed for breach of contract. The jury verdict was against Seeburg on its claim and for Minthorne on the counter-claim in the amount of $129,371.00.
 
 
 3
 As to the counter-claim, Seeburg claims it filed a motion for a new trial as to damages only[2] and a motion for judgment notwithstanding the verdict, which later motion was granted by the trial court. No action was taken by the trial court on the motion for a new trial as to damages.
 
 
 4
 Seeburg moved for a new trial on various grounds as to its claim, which was denied. Both parties appealed. However, Seeburg by its brief and on the argument of this case, expressly abandoned its appeal from "a denial of either a new trial or an affirmative judgment for Seeburg" on its claim in chief.
 
 
 5
 Thus, only three questions, each concerning the counter-claim, are presented for decision. (1) On the Minthorne appeal, (a) whether the defense of "no promise" should have been pleaded affirmatively or raised at pretrial and whether Seeburg may raise the question on a post-trial motion; (b) whether the trial court erred in granting the motion for judgment notwithstanding the verdict entered on February 17, 1965, whereby the trial court set aside the jury verdict of $129,371.00 for Minthorne on the counter-claim. (2) On Seeburg's cross-appeal,[3] if, and only if, the verdict is reinstated, the effect of the failure of the trial court to rule on Seeburg's motion for new trial as to damages only.
 
 
 The Major Issue
 
 
 6
 The major issue in the case is whether certain provisions in the contract, on which the verdict for $129,371.00 was based constitutes only a condition precedent or an affirmative promise or both.
 
 
 Background
 
 
 7
 The case arises from a commercial transaction resulting in a law suit in which various claims were, from time to time, tried. The action started in August of 1961. Because of illness, death and vacancies in the district court of Arizona, five different federal judges tried portions of the over-all case. The matter involved in the appeal grew out of a jury trial in March and April of 1964. The order granting judgment notwithstanding the verdict was entered February 17, 1965. A final judgment covering this part of the case and many other matters was entered June 9, 1966. The appeals are from this final judgment.
 
 
 8
 Prior to February of 1960, Jean J. Minthorne was the principal shareholder of Minthorne Music Co., a distributor of equipment for Seeburg Corporation in Arizona and Southern California. The equipment consisted of coin operated machines, phonographs and game equipment. Seeburg Corporation was the manufacturer. Minthorne Music Company became deeply indebted to Seeburg Corporation, and after protracted negotiations an agreement was entered into on February 17, 1960. The agreement provided that Minthorne as an individual sold his stock in the Minthorne Music Company to Seeburg Corporation, which in turn changed the name of Minthorne Music Co., to Seeburg Distributing Company.
 
 
 9
 The agreement was an intricate one, with many pages and various riders in the form of Exhibits. The result of the agreement was that Minthorne individually and as the Minthorne Music Co., went out of the business involving his distributorship in California but continued for a time to operate a distributorship in Arizona. The agreement contained many other items with which we are not concerned. The action was brought by Seeburg to enforce various commitments and warranties made by Minthorne.
 
 
 10
 This appeal concerns what was known as the "Stereo claim." Arizona Stereophonic Music Corp., (hereafter "Stereo") was the operator of certain equipment which had been purchased from the Minthorne distributorship. The contracts had been discounted with a finance company, Refrigeration Discount Company, (hereafter "ReDisCo"). There was $95,827.21 due for equipment and time service charges. On discounting the paper to ReDisCo, there had been signatures of both the Minthorne Corp., and Minthorne individually guaranteeing the accounts. The contracts had in turn been guaranteed by Seeburg. The account was delinquent and ReDisCo demanded payment of the sum of $65,000.00 from Seeburg in April of 1961. The account was later paid off by Seeburg. Nothing was paid by Minthorne.
 
 
 11
 The machines which were the subject of the contract with Stereo were repossessed and sold by Seeburg on June 30, 1961, leaving a claim by Seeburg for a deficiency of about $40,000.00. This claim for the $40,000.00 became Count II of the complaint by Seeburg against Minthorne, Stereo, and various individual guarantors. Stereo had become bankrupt. A default judgment was taken by Seeburg against Stereo and various individual guarantors.
 
 
 12
 There had been a general counterclaim filed by Minthorne to the Seeburg complaint and part of this counterclaim became the basis for the $129,000.00 jury verdict obtained by Minthorne against Seeburg.
 
 
 13
 When, after various trials of various other issues before various judges, the parties got down to the matter in which we are now concerned, there were two matters tried to the same jury before the same district judge. One was the K. D. Smith matter referred to in Ex. D. The other was the Stereo matter described above.
 
 
 14
 The Seeburg claim was that Stereo had defaulted; that Seeburg had repossessed the equipment and had sold it at an over-all loss of $40,000.00 and had therefore sought damages from Minthorne as a guarantor on his contingent liability. The jury in effect, decided that Seeburg had not followed the procedures laid out in Ex. D, and found against Seeburg on its claim for $40,000.00. All contentions of Seeburg on appeal as to this matter have been abandoned.
 
 
 15
 The essence of the Minthorne counter-claim as developed at the trial was that Minthorne was entitled to keep the equipment and operate it due to the failure of Seeburg to follow the promises set forth in Ex. D, and that Minthorne was damaged by reason of its failure to be allowed to do so.
 
 
 16
 The court submitted an instruction to the jury which in substance stated that if Seeburg was not entitled to claim indemnity on the contingent liability of $40,000.00 because it had failed to follow the contract procedures, then Minthorne was affirmatively entitled to damages for this failure by Seeburg. The instruction told the jury to assess damages. The jury found against Seeburg on its claim for $40,000.00, and returned a verdict in favor of Minthorne for $129,371.00, which was then nullified by the court's entry of judgment notwithstanding the verdict.
 
 A. MINTHORNE'S APPEAL
 
 17
 1. Minthorne's contention that the defense of "no promise" was not affirmatively pleaded or raised at pretrial; that Seeburg may not raise it on a post trial motion.
 
 
 18
 It is the contention of Minthorne that the particular ground on which the judge granted the motion for judgment notwithstanding the verdict, namely that Ex. D contained only a condition precedent to recovery and no independent promise or covenant, was raised for the first time after the verdict. Seeburg answers that all along it contended that there was no cause of action stated in that part of the counter-claim which was tried to this jury. Apparently it was at the time that jury instructions were being discussed, that for the first time, Seeburg particularized its objection to the counter-claim and made the contention which is specifically set forth on this appeal, to-wit, that Ex. D contained only a condition and not a promise or a covenant.
 
 
 19
 Minthorne contends (1) that the defense of lack of covenant or promise was not affirmatively plead or raised in pretrial, and (2) that by the doctrine of estoppel or waiver, Seeburg may not raise the issue for the first time on a post trial motion. Because of our holding in this appeal, namely that there was a covenant or promise in Ex. D, we do not pass on these contentions.
 
 2. Interpretation of the Contract
 
 20
 The question comes down essentially to an interpretation of the contract. Ex. D was a part of and must be considered with the entire contract, dated February 17, 1960. Cal.C.C. § 1641; Rest.Contracts § 235(c). Section 15, of the contract, provides that it be interpreted pursuant to California law.
 
 
 21
 There is much discussion in Minthorne's briefs as to whether there was a condition precedent or a promise or covenant. Witkin, California Law, § 233, p. 262, states:
 
 
 22
 "* * * but the same fact or act may be both a condition and a promise, resulting in both an excuse of counter performance and a right of action for damages. (See Rest., Contracts, para. 257; Starr v. Davis (1930) 105 C.A. 632, 288 P. 706; Schlesinger & Sons v. Kohler & Chase (1930) 103 C.A. 195, 284 P. 244.)"
 
 
 23
 In considering what the parties meant by the language in the contract, we are entitled to take into account the background, the facts underlying execution of the contract and in particular the business methods involved in manufacturing, distributing and operating vending machines. Cal.C.C. § 1647.
 
 
 24
 It is well settled in California that courts are not inclined to construe stipulations of a contract as conditions precedent unless such construction is compelled and plainly expressed by the language of the contract. Brubaker v. Beneficial, etc., Life Ins. Co., 130 Cal. App.2d 340, 278 P.2d 966 (1955); Verdier v. Verdier, 133 Cal.App.2d 325, 284 P.2d 94 (1955); Victoria S.S. Co. v. Western Assur. Co., 167 Cal. 348, 139 P. 807 (1914); Baker Aircraft Sales, Inc. v. Cassel, 200 Cal.App.2d 563, 19 Cal. Rptr. 581 (1962); Sosin v. Richardson, 210 Cal.App.2d 258, 26 Cal.Rptr. 610 (1962).
 
 
 25
 The agreement of February 17, 1960, provides in Section 3A that Minthorne Music Co., "shall assign, transfer and convey to Seller (Minthorne) on the Closing Date the following assets:
 
 
 26
 (a) Parts, equipment, furniture and leasehold improvements located at * * * Phoenix, Arizona, together with background music equipment at various locations in Arizona * * * [Emphasis added]
 
 
 27
 (b) * * *
 
 
 28
 (c) * * * "Seller (Minthorne) will deliver to Minthorne Music Co., * * * his assumption * * * of the lease of the Phoenix branch premises * * *".
 
 
 29
 Ex. D attached to the agreement of February 17, 1960, first provided Minthorne should "remain contingently liable on Conditional Sales Contracts and Chattel Mortgages in an * * * amount of * * * $569,000.00 consisting primarily of Equipment Contracts in Arizona and contracts on equipment owned and operated by Seller (Minthorne) his wife * * * and the related companies * * *" [Emphasis added]. These provisions demonstrate that Minthorne was to continue as an operator of the equipment in Arizona.
 
 
 30
 Next Minthorne was indemnified against his contingent liability of $816,000.00 on other contract guarantees.
 
 
 31
 Finally there were the provisions in four sections prefaced by "* * * in the event a delinquency in any payment occurs in connection with any of the Conditional Sales Contracts and/or Chattel Mortgages and/or Leases, totaling approximately $569,000.00, upon which Seller remains contingently liable, the following procedure will be adopted:" [Emphasis added]
 
 
 32
 Section 1 provided that for a period of 90 days after receipt of notice of delinquency, Seeburg would "use its best efforts to negotiate in each individual case a course of action acceptable to Seller (Minthorne)".
 
 Section 2 provided:
 
 33
 "Seeburg and Minthorne Music Co., will during a period of ninety (90) days from receipt of such monthly notice of delinquency endeavor to avoid re-possession and cooperate with Seller in an arrangement to incur the least possible loss either by a partial or complete refinancing at the lowest financing rate available and over a period of time mutually satisfactory to Seller and Seeburg and Minthorne Music Co., or if Seller desires, Seeburg and Minthorne Music Co., shall give Seller the opportunity to take over the said equipment and operate it himself[4] or with Seller's consent, Seeburg or Minthorne Music Co., will resell the equipment contract or chattel mortgage or lease in question or any part of it to other customers. * * *". [Emphasis added]
 
 
 34
 Section 3 provided that if during the 90 day period, Seeburg and Minthorne agree that repossession is unavoidable, Minthorne Music Co. (then owned by Seeburg), would pay the balance on the contract involved, take the equipment, and resell at a price satisfactory to Seller. Any difference or balance remaining would be charged to $31,000.00 reserve fund, with no liability to Minthorne until the fund was exhausted.
 
 
 35
 Section 4 provided that if Seeburg and Minthorne failed to agree within the 90 day period as to action to be taken, then at the expiration of the 90 day period, Seeburg was free to take such action as it saw fit.
 
 
 36
 It is patent that these were provisions and promises to protect Minthorne as both a distributor and an operator from the effect of a delinquency in payments to be made under contracts; and to prevent default and repossession. The provisions ran to Minthorne to the extent that he was a distributor, and to him, with other persons, as operators of the machines.
 
 
 37
 Briefly, it is not in dispute that manufacturer, (Seeburg) makes the machines and sells them to distributors, (Minthorne and others). The distributor sells the machine to the operators, who execute a contract which is guaranteed by the distributor, (Minthorne), and by the manufacturer, (Seeburg). The contract, as commercial paper, is then discounted to a commercial corporation, (ReDisCo). ReDisCo then holds the contract with the written guarantee of the manufacturer (Seeburg) and the distributor (Minthorne). In the case at bar, by the contract of February 17, 1960, Minthorne continued to be a distributor in the Arizona area but also was an operator of certain of the machines, thus occupying a dual position.
 
 
 38
 The desires and interest of the various parties vary in such a business transaction. It is to the interest of the manufacturer, the distributor and the discount company to have good commercial paper, and to have speedy and efficient methods to repossess the equipment if there is a default by the operator. It is to the interest of the operator to be allowed to operate his machines on his route and to have such protection as he can secure from speedy and effective repossession in the case of a default. Thus, Minthorne in its capacity as an operator and not as a distributor, was benefited by the provisions protecting it against default and repossession. But it was also to his interest as a distributor, to take over and operate the equipment in case the operator defaulted.
 
 
 39
 The jury verdict establishes that Seeburg did not give Minthorne "the opportunity to take over the said equipment and operate it himself." The jury found against Seeburg on its $40,000.00 claim and awarded Minthorne $129,371.00 as damages.
 
 
 40
 We interpret the contract as providing special rights to Minthorne to give him protection against default and a promise to allow him to take over the equipment and operate it.
 
 
 41
 Since there was a promise on which the verdict was returned, it was error to grant the motion for judgment notwithstanding the verdict.
 
 B. SEEBURG'S CROSS-APPEAL
 1. The Notice of Appeal
 
 42
 The cross-appeal by Seeburg filed July 21, 1966, did not appeal from any matter which Seeburg is now contesting in this appeal.[5] There is no reference to the failure to conditionally rule on the motion for a new trial.
 
 
 43
 This Circuit in Gordon Mailloux Enterprises, Inc. v. Firemen's Insurance Company, 366 F.2d 740 at 741-742 (1966), in a similar situation where there had been no conditional ruling on the motion for new trial, and where a cross-appeal had not been taken, held that the trial court must, on remand, act upon the undisposed motion. Harp v. Montgomery Ward & Co., 336 F.2d 255 (9 Cir.1964) was a case where there was no cross-appeal. The court cited Montgomery Ward & Co. v. Duncan, 311 U.S. 243-254, 61 S.Ct. 189, 195, 85 L.Ed. 147, wherein the Supreme Court stated: "We see no reason why the appellee may not and should not, cross-assign error in the appellant's appeal, to rulings of law at the trial." See also Moist Cold Refrigerator Co., Inc. v. Lou Johnson Co., Inc., 249 F.2d 246 (9 Cir.1957); and the note of the Advisory Committee on the Rules following Rule 50, Rules of Civil Procedure, 28 U.S.C. F.R.C.P., presently in pocket part, which note discussed the amendments to Rule 50, effective July 1, 1963. We hold that no notice of cross-appeal was necessary for Seeburg.
 
 
 44
 2. The Motion for New Trial on the Issue of Damages
 
 
 45
 Seeburg has in its brief, a section, "The Alternate Cross-Appeal as to Damages," which states that it "moved for a new trial in two aspects, one being application for new trial on its affirmative claim for relief," (this ground has been abandoned), "and the other being an application for a new trial as to damages in the alternative if a motion for judgment N.O.V. was not granted. The court below granted the motion for judgment N.O.V. * * * It did nothing one way or the other with defendant's motion for new trial as to damages on the counter-claim."
 
 
 46
 The motion for new trial or for judgment N.O.V. read as follows:
 
 
 47
 "Plaintiffs move for new trial in the cause or in the alternative for a judgment notwithstanding the verdict. In connection with the motion for judgment notwithstanding the verdict, plaintiffs ask that the judgment for defendants be set aside and that the judgment be given to the plaintiffs in the amount of $40,000.00, plus fees and costs as prayed for in this record."
 
 
 48
 "This motion in both its alternative aspects is supported by the brief in the motion for new trial filed herewith * * *". [Emphasis added]
 
 
 49
 The second sentence referring to judgment notwithstanding the verdict as to plaintiff's claim for $40,000.00, refers to a contention which has been expressly abandoned by Seeburg in this appeal. The first sentence however is broad enough to support its motion for a judgment N.O.V. as to the $129,317.00, verdict in favor of Minthorne, being the motion which the court granted. As to the motion for a new trial, we then have left the bare statement, "Plaintiffs move for a new trial in the case * * * this motion * * * is supported by the brief * * *".
 
 
 50
 If we consider the brief as part of the motion, and this is certainly extending every consideration to Seeburg, then we find grounds for the motion for new trial on the issue of damages unruled on in the trial court. See Robinson v. Isbrandtsen Co., 203 F.2d 514, 516 (2 Cir. 1953).
 
 
 51
 In the fourth point in the brief, the contention is that "the verdict is so completely against the weight of the evidence that it should not be allowed to stand," and the evidence is extensively discussed.
 
 
 52
 We hold that there is a motion for new trial on the issue of damages, not yet ruled on by the trial court.
 
 3. Motion For New Trial on Other Grounds
 
 53
 Throughout its briefs here, Seeburg contends that the motion, unruled on by the trial court, is one for a new trial as to damages. No other ground has been briefed in this court. Other matters were discussed in the trial court brief in support of the motion for new trial, referred to above. One is a discussion of the verdict on the counter-claim, and whether or not the particular clause was a condition precedent or a covenant. The argument goes entirely to the question of law as to whether there was a promise which would support the verdict. We have ruled on this counter-claim.
 
 
 54
 The second point concerns only Seeburg's failure to recover on its claim, now abandoned on this appeal.
 
 
 55
 The third point directs itself to alleged error in the verdict against Seeburg on its claim now abandoned in this appeal. In the third point, it is possible that Seeburg is attacking the Minthorne verdict, but the presentation is by no means clear.[6]
 
 
 56
 We conclude: (1) that the question of liability was entirely one of law on an interpretation of the contract, and since we have found that the contract contains a promise, and since the jury verdict, which we reinstate, establishes liability of Seeburg to Minthorne on the counter-claim, this need not again be litigated in the trial court; (2) that a motion for new trial, on the question of damages only, is pending and should be ruled on by the trial court.
 
 
 57
 The question of damages was a question of fact for the jury, but on a motion for new trial on the question of damages, this Circuit has held that the trial judge "is not limited to questions of law" but may "grant a new trial when he is of the opinion the verdict is against the weight of evidence." Southern Pacific Co. v. Guthrie, 186 F.2d 926, 932 (9 Cir.1951; Siebrand v. Gossnell, 234 F.2d 81, 94 (9 Cir.1956). Here we have affirmed as to liability. Thus, on hearing the motion for new trial, the court may grant the motion and order a new trial on damages or deny the motion and reinstate the judgment in favor of Minthorne and against Seeburg, or grant a remittitur with the alternative of a new trial if the remittitur is not complied with.
 
 
 58
 The judgment is reversed and remanded for proceedings pursuant to this opinion.
 
 
 
 Notes:
 
 
 [1]
 Refrigeration Discount Corporation, (hereafter ReDisCo) was a co-plaintiff in the amended complaint, but has not appealed
 
 
 [2]
 We state advisedly, "Seeburg claims it filed a motion * * *". See section infra in this opinion
 
 
 [3]
 Actually there was nothing appealed from. See section infra in this opinion
 
 
 [4]
 This is the clause on which the jury based its verdict in favor of Minthorne
 
 
 [5]
 The notice of cross-appeal states that the appeal is from the portion of a final judgment dated June 9, 1966, "as to which a motion for new trial was denied on July 5, 1966, as follows:
 "(1) From the order * * * in respect to the matter known as the accounts receivable claim * * *". (This was abandoned in the present appeal).
 "(2) From the judgment of the court dated February 15, 1965, giving judgment for defendant Melanie Minthorne on the claim known as Arizona Stereophonic claim and from the denial of a new trial on affirmative judgment for plaintiffs on that date." (This contention has been abandoned in the present appeal).
 "(3) From the judgment of June 9, 1966, giving judgment for the defendant on that claim known as the Property claim." (This has been abandoned in the present appeal).
 
 
 [6]
 There is discussion of the instructions in defendant's trial brief, and in plaintiff Minthorne's reply memorandum there are contentions that proper objections were not made to the instructions given. There is nothing in the briefs on appeal concerning any alleged errors in the instructions
 We have inspected the instructions given, the special interrogatories, and the alleged objections, and find no error.