Filed 1/15/21  Harper v. Poortinga CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GARY L. HARPER,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MYRNA M. POORTINGA,<br><br>  Defendant and Appellant. | D077067<br><br><br>(Super. Ct. No. 37-2010-00152136-PR-TR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Law Offices of Gregory J. Hout and Gregory J. Hout for Defendant and Appellant.

The Stone Law Group, Kenneth H. Stone and Phillip J. Szachowicz for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant John C. Poortinga appeals from a judgment entered by the trial court requiring him to pay a money judgment to plaintiff Gary L. Harper after Harper brought a motion to enter judgment, pursuant to Code of Civil

Procedure section 664.6 (section 664.6), seeking to enforce a settlement agreement between the two parties that was entered in a probate litigation matter.[1]

Pursuant to the settlement agreement, Harper would assign to Poortinga certain debentures issued by a business venture called "easi.info"; Poortinga would resign as trustee of certain trusts for which Harper was a beneficiary and would issue and deliver to Harper a note for more than $700,000, payable annually, beginning on September 27, 2014, "at 6% interest over five (5) years."

Neither Harper nor Poortinga performed his obligations under the settlement agreement for a period of approximately two years after the agreement was reached. In August 2015, Harper filed a breach of contract action against Poortinga, seeking enforcement of the settlement agreement. After proceedings in the trial court that spanned several years, the matter was eventually referred to the probate court for consideration of Harper's motion to enter judgment pursuant to the terms of the settlement agreement under section 664.6.

---

[1] While this appeal was pending, John Poortinga died. After additional proceedings in the probate court, the parties stipulated that Myrna M. Poortinga, John Poortinga's surviving wife, would act as the special administrator of John Poortinga's estate "for the sole purpose of prosecuting the [current] appeal as his personal representative." The parties requested that upon Myrna Poortinga's appointment as special administrator of John Poortinga's estate, this court authorize her substitution as the party prosecuting the appeal on behalf of John Poortinga's estate. This court hereby grants the request. Myrna Poortinga is therefore substituted as the appellant in the pending appeal. However, for purposes of clarity and in order to maintain consistency in this opinion, we will continue to refer to the appellant as John Poortinga.

2

The same judge who had overseen the parties' earlier probate litigation granted Harper's motion to enter a judgment pursuant to the terms of the settlement agreement. The court entered a judgment that required Poortinga to pay the full amount that would have been due on the note if the note had been issued and paid in full within five years after the first payment was required to be made, as specified under the settlement agreement.

On appeal, Poortinga challenges the trial court's judgment on a number of grounds. We conclude that Poortinga's arguments are without merit, and we therefore affirm the judgment of the trial court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Probate Case*

On September 28, 2010, Harper filed a probate petition for breach of trust, alleging claims for fraud, deceit, self-dealing, and misrepresentation against Poortinga, who was a co-trustee of two Harper Family Trust sub-trusts, known as the Grandchildren's Trust and the Bypass Trust.

On August 26, 2013, Poortinga and Harper attended a mandatory settlement conference in the probate action. Poortinga and Harper were in separate rooms during the settlement conference. The parties reached a settlement, and someone hand wrote the terms of the agreement on a Judicial Council form titled "Stipulation and Order after Mandatory Settlement Conference." (Some capitalization omitted.) Both Harper and Poortinga executed the document, along with their respective attorneys. The stipulated agreement was presented to the court, and Judge Kelety signed the document under the phrase, "It is so ordered" (some capitalization omitted), making it an order of the court. Neither the settlement conference

3

nor the portion of the proceeding held in open court was reported on the record.

The final settlement agreement (the Settlement Agreement) included the following relevant terms:

"John Poortinga:

"(1) To issue Note in favor of Mr. Gary Harper and Joseph Scirretta, jointly and severally, for $721,750. Said Note shall be payable at 6% interest over five (5) years, paid annually at the end of each year on the anniversary of the Note. First payment due September 27, 2014.

"(2) John Poortinga to provide, under penalty of perjury, a completed Bankruptcy petition (including all schedules to include wife's assets) as if he were going to file the petition today. Said schedules will be provided w/ declaration under penalty of perjury no later than September 27, 2013 and annually thereafter until the term of the Note [*sic*].

"(3) John Poortinga to disclose in his declaration the atty's fees paid to defend this Action, as well as any transfers of assets made in the past 2 years.

"(4) John Poortinga to pledge all Assets in Excess of any bankruptcy exemption in favor of the Note and will sign any further documents that are necessary to effectuate the pledge of collateral.

"(5) John Poortinga will receive as his property the shares/debentures of easi.info, inc [*sic*] share[s] from the grandchildren Trust, Bypass Trust, + [*sic*] Gary Harper and the MENTOR CAPITAL (symbol MMTR) from the Bypass Trust no later than September 27, 2013."

The Settlement Agreement also included a release provision by which the parties agreed to "fully [and] completely release each other from any and all claims," as well as a provision stating, "Ct. to retain jurisdiction of this

4

matter," with a notation referencing "664.6," as well as a further notation that the "[p]revailing party [is] to receive Atty fees for breach of the Agreement."

Also included on the Judicial Council form used by the parties to memorialize their settlement agreement, in a section just above the parties' signature lines, was the following typed statement: "I have read the entire stipulation. I understand it fully and request the court to make our stipulation the court's order. I understand that willful failure to comply with the provisions of this order will be a contempt of court and may be punished by fine and imprisonment. I waive all further notice of this order."

The Settlement Agreement was signed and dated by Judge Kelety.

What transpired after the execution of the Settlement Agreement remains somewhat unclear and the parties disagree as to what, precisely, occurred. It is clear, however, that after the Stipulation and Order was entered, Poortinga's counsel and Harper's counsel communicated with each other regarding their clients' performance under the terms of the Settlement Agreement. Each party maintains that the other failed to complete his respective tasks under the Settlement Agreement.

Poortinga contends that, as early as October 9, 2013, he delivered an executed promissory note and other required documents to his attorney, who was to exchange documents with Harper's counsel, and that Harper's counsel failed to properly respond. Poortinga refers to an e-mail that his attorney sent to Harper's attorney on October 10, 2013, in which Poortinga's attorney stated, "I also now have all signed settlement documents in my possession including: the declaration of John Poortinga; BK schedules; resignations as Trustee; Assignment of [e]asi.info debentures; and signed promissory note. With respect to these documents, I need to obtain Gary's signature on the

5

assignments of easi.info debentures. I propose that I forward the originals to you for you to have Gary sign, then that you return those originals to me within two weeks. Is that acceptable?" According to Poortinga, his attorney received no response to this e-mail. However, Harper asserts that his attorney requested copies of these documents in order to be able to review them for accuracy and completeness, and that Poortinga's attorney failed to provide the documents to Harper's attorney.

Further, according to a declaration submitted by Poortinga's attorney, she and Harper's attorney separately agreed to the simultaneous exchange of the documents necessary for both parties to satisfy their respective obligations under the Settlement Agreement. However, elsewhere in the record, in a letter dated January 10, 2014, Poortinga's attorney requested that Harper "execute and return" the "[e]asi.info assignments," and that Harper's attorney "prepare and forward the real property assignments and other ancillary documents that John Poortinga needs to sign to effect those transfers." The letter stated that once she has received those documents, she "will gladly forward fully executed copies of the Easi.info assignments, the note, bankruptcy schedules with accompanying declaration, and my client's signed resignations." Thus, it would appear from this letter that Poortinga's attorney was conditioning the delivery of all of the documents that Poortinga was to execute and deliver on Harper's performance of his obligation under the Settlement Agreement to assign the easi.info debentures to Poortinga.

The record demonstrates that neither party had performed his obligations under the Settlement Agreement as of August 2015.[2]  On August 18, 2015, Harper filed a civil action against Poortinga for breaching the terms of the Settlement Agreement (the Civil Case).  At this point, it was approximately 11 months after Poortinga's first payment on the note had been due (on September 27, 2014), and approximately 23 months after Harper was to have assigned the easi.info debentures to Poortinga (on September 27, 2013).

The Civil Case remained pending for approximately four years.  Harper contends that the case languished during this time period due to "numerous requests for continuances and extensions" resulting from Poortinga's "decision to represent himself just over one month before the original Trial Readiness Conference," as well as medical issues and the parties' "hopes of informally resolving the matter."[3]

Poortinga did not deliver a note to Harper, and did not make any payments, as would have been required on the note, to Harper or to Harper's

---

[2]    In appellate briefing, Poortinga contends that he completed tasks "(1) and (2)" under the Settlement Agreement—i.e., that he distributed the remaining assets of the bypass trust to Harper, and that he resigned as Trustee of the bypass trust on or before September 27, 2013.  However, the location in the record to which he cites for this contention is his personal declaration, submitted in opposition to Harper's motion under section 664.6.  In that document, Poortinga stated that he "signed [the] Promissory Note, the Resignations of Trustee, the 'Declaration of John C. Poortinga As Required by the Settlement Agreement Entered Into on August 23, 2013', and the Assignments of the trusts' debentures as Co-Trustee."  It is not clear whether Poortinga's execution of these documents was sufficient to constitute completion of the tasks identified.

[3]    In December 2018, Harper retained new counsel to represent him in both the Civil Case and the probate matter.

attorney during the pendency of the action. The full balance of the promissory note that Poortinga was obligated to execute pursuant to the terms of the Settlement Agreement would have been paid in full by September 27, 2018 if it had been paid within five years of the first payment, as required under the agreement.

A trial in the Civil Case was set to commence on May 7, 2019. However, on that date, the trial judge overseeing the Civil Case raised an issue that had not previously been raised or addressed by either party. The court indicated that it believed that the Probate Court had retained jurisdiction over the Settlement Agreement and that "either [ ]side who wants to enforce it just brings a motion in front of Judge Kelety." The court stayed the Civil Case in order to allow the parties to file a motion under section 664.6 in the Probate Court.[4]

On May 15, 2019, Harper filed a motion under section 664.6 in connection with the probate matter in the Probate Division of the trial court. Harper supported the motion with his own declaration, as well as the declaration of his attorney, to which various exhibits were attached, including correspondence between the parties' attorneys and transcripts from the parties' depositions. In the motion, Harper asserted that Poortinga had failed to satisfy his obligations under the Settlement Agreement, and argued that the parties' obligations under the Settlement Agreement were independent covenants, such that neither party's obligation to perform was conditioned on the other party performing. Harper requested that the court enter a judgment consistent with the Settlement Agreement, including a

---

[4] The trial court in the Civil Case proposed that the parties stipulate to allow the trial judge in the Civil Case to conduct a proceeding pursuant to a section 664.6 motion. Poortinga's attorney was not willing to agree to proceed in that manner.

8

money judgment in the amount of $964,673.10, which Harper asserted was the amount that Poortinga should have paid to him on the promissory note that was to have been issued and fully paid by the time the section 664.6 motion was made, plus attorney fees and costs.

In his opposition to Harper's section 664.6 motion, Poortinga objected to certain evidence proffered by Harper, including the submission of the Settlement Agreement, itself. Poortinga contended that Harper's signature on the document had not been authenticated or attested to. In support of this contention, Poortinga referred to a portion of Harper's deposition testimony, which Poortinga characterized as indicating that Harper had not actually signed the Settlement Agreement.

Judge Kelety—the same judge who had signed the Settlement Agreement and entered it as a court order—heard Harper's section 664.6 motion. After the contested hearing, Judge Kelety took the matter under submission.

On August 21, 2019, Judge Kelety issued an order granting Harper's section 664.6 motion. In doing so, the court overruled both parties' evidentiary objections. Most relevant to the current appeal, the trial court held:

> "Here, the court finds that the agreement between the parties was valid. It is not ambiguous, was entered into by parties capable of contracting and was based on mutual consent, a lawful object and sufficient cause or consideration. It also continues to be enforceable. (CCP § 683.020.) Additionally, in signing the Settlement, both parties acknowledged that 'I have read the entire stipulation. I understand it fully and request the court to make our stipulation the court[']s order. I understand that willful failure to comply with the provisions of this order will be a contempt of court and may be punished by fine and imprisonment. I waive all further notice of this order.'

9

With respect to the allegation that the Settlement is not valid because [Harper] either did not sign it or did not understand it, the court rejects this contention as [Harper] was present in court and it is this court's custom and practice to verify both that the parties personally signed the agreement and that they understood its terms. It is also immaterial that [Harper's] former attorney believed the agreement to be 'tentative,' as he was not a party to it.

"Additionally, the court rejects [Poortinga's] argument that the filing of a civil suit results in a waiver of CCP § 664.6's expedited procedure. As correctly noted by [Harper], *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, the *filing* of a civil suit does not constitute an automatic waiver of one's ability to pursue remedies under CCP § 664.6.

"The court also rejects [Poortinga's] argument that the signing of the debentures was a 'condition concurrent,' and [Harper's] failure to sign the debentures excused [Poortinga's] obligation to perform. 'The statutory language makes it clear [ ] that a party moving for the entry of judgment pursuant to a settlement under Code of Civil Procedure section 664.6 need not establish a breach of contract to support relief under the statute.' (*Hines v. Lukes, supra*, 167 Cal.App.4th at 1185.) Here, as in *Hines*, the terms of the Settlement 'do not indicate that any of the items specified by [Harper] was required to be performed before any part of [Poortinga's] performance became due.' (*Id.* at 1184.) '[N]onperformance [by Harper] does not constitute a breach of contract and does not give rise to a remedy for breach of contract [by Poortinga].' (*Id.* at 1185.) In short, [Poortinga's] obligation to perform was thus separate and distinct from [Harper's] obligation to perform and [Harper's] failure to sign the debentures did not serve to relieve [Poortinga] of his obligations under the Settlement. Pursuant to these facts, there is therefore also no basis for relief under the doctrine of unclean hands.

"With respect to the defense of laches, the court finds that it does not serve to relieve [Poortinga] of his obligations under the Settlement. As correctly noted by [Harper], his

civil suit was filed in 2015 and has been proceeding ever since. Like the current motion, it seeks to enforce the terms of the Settlement. Even prior to the filing of the civil suit, [Poortinga] acknowledges that his attorney and that of [Harper] were engaged in communication regarding Settlement terms. 'The elements of laches are (1) the failure to assert a right (2) for some appreciable period so as to amount to unreasonable delay (3) which results in prejudice to the adverse party.' (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 642.) Here, [Harper] asserted his rights early on and he and [Poortinga] have been engaged in litigation for many years such that [Poortinga] should have been amply aware that he needed to prepare to answer for his failure to perform under the Settlement. Therefore, the court finds both that there was no unreasonable delay by [Harper] and no prejudice to [Poortinga].

"In light of the above, the court grants the motion and orders enforcement of the Settlement as to BOTH parties. Further, it enters judgment pursuant to the terms of the Settlement, which judgment shall be prepared by counsel for [Harper]. Such proposed judgment may include a calculation of interest pursuant to the terms of the Settlement."

The court denied Harper's request for attorney fees and costs, making a finding "that the request for enforcement could have been brought by either party based on the other's failure to perform."

On September 10, 2019, the trial court signed a proposed judgment that Harper's attorney had submitted, with modifications. The judgment signed by the trial court included the following four provisions:

"1. That GARY L. HARPER have judgment against JOHN C. POORTINGA in the amount of Nine Hundred Thirty Eight Thousand Two Hundred Seventy Five Dollars ($938,275.00),

11

"2.  That JOHN C. POORTINGA shall provide GARY L. HARPER c/o The Stone Law Group, 225 Broadway, Suite 1720 completed bankruptcy petitions including all schedules and assets for the calendar years 2014 through 2018, forthwith.

"3.  That GARY L. HARPER shall deliver his executed assignment of the easi.info, inc. debentures to JOHN C. POORTINGA c/o Gregory J. Hout, Esq., 12396 World Trade Drive, Suite 206, San Diego, CA 92128, forthwith.

"4.  Each party shall bear their respective attorney fees and costs."

Poortinga filed a timely notice of appeal from the judgment.

## III.

## DISCUSSION

A.  *The trial court did not exceed its jurisdiction pursuant to section 664.6 in interpreting the Settlement Agreement to include an obligation that Poortinga pay the note in full within five years after the first payment came due*

Harper filed his motion to enforce the Settlement Agreement under section 664.6.  Section 664.6 provides, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

"Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit."  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).)  Ordinary principles of contract interpretation apply to

12

settlement agreements being considered under section 664.6. (*Weddington, supra*, at p. 797.)

In ruling on a section 664.6 motion, the trial court acts as a trier of fact, with the authority to interpret *both the express and implied terms* of a settlement agreement. (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889; *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 565.) In determining whether the parties entered into a valid and binding settlement and what the terms of the settlement are, the court may receive oral testimony in addition to declarations. (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) Further, if the same judge presides over both the settlement proceedings and the section 664.6 hearing, that judge may avail herself of the benefit of her own recollection of the settlement proceedings. (See *Richardson v. Richardson* (1986) 180 Cal.App.3d 91, 97 (*Richardson*).)

Because we apply settled rules applicable to all contracts when interpreting the terms of a settlement agreement (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*)), as with any contract, a binding settlement agreement requires mutual consent and definite terms. " 'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" (*Weddington, supra*, 60 Cal.App.4th at p. 811.) In ruling on a motion to enter judgment on a settlement agreement, the trial court must resolve disputed issues relating to the binding nature or terms of the settlement "and ultimately determine whether the parties reached a binding mutual accord as to the material terms." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905.)

13

While the court may interpret the terms of the parties' settlement agreement, "nothing in section 664.6 authorizes a judge to create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon." (*Weddington*, *supra*, 60 Cal.App.4th at p. 810, italics omitted.)  Further, a motion to enter and enforce a judgment under section 664.6 is not equivalent to a breach of contract action; a party seeking the court's assistance through a section 664.6 motion need not establish that the settlement agreement has been breached in order to obtain relief from the court pursuant to section 664.6.  (See *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1185 (*Hines*).)

We presume that a judgment entered pursuant to a section 664.6 motion, like any other judgment, is correct, and we "must indulge all presumptions in favor of its correctness." (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1338.)  "In keeping with that standard, we will infer findings in support of the judgment if such findings are supported by substantial evidence." (*Ibid.*)  We affirm the factual determinations made by the trial court if they are supported by substantial evidence.  (*Weddington*, *supra*, 60 Cal.App.4th at p. 815.)  We review the trial court's legal conclusions and contract interpretations de novo.  (See *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

Poortinga contends that the trial court exceeded its authority in determining that he owed Harper $938,275, and in entering a judgment for that amount.  Poortinga argues that "[t]he settlement agreement called for the performance of an act [i.e., the execution of a promissory note]," but did "not require the payment of money."  Thus, Poortinga asserts, "[i]f the settlement agreement requires a party to issue a note payable over the next

14

5 years, the court can only order that party to issue and deliver a note payable over the next 5 years."

The trial court effectively concluded that the Settlement Agreement obligated Poortinga *not only* to execute a promissory note in favor of Harper and his attorney for $721,750, but also to *pay* the agreed-upon amount within five years of the first payment, as set forth in the Settlement Agreement.

The trial court's determination that the Settlement Agreement included not only the obligation to issue a promissory note but also the obligation to pay the amount provided for in the note within a particular time period is supported by the language of the Settlement Agreement, itself. The Settlement Agreement not only required Poortinga to issue a promissory note, but specifically provided that the note was to be paid at six percent interest over five years, and that each payment was due "annually at the end of each year on the anniversary of the Note," with the first payment due on September 27, 2014. The specificity of the payment schedule, together with the defined interest rate, demonstrates that the parties agreed that Poortinga not only had to execute the note evidencing his promise to pay, but also that he was obligated to pay the amount stated in the note, plus the identified interest, over a five-year period beginning on the date the first payment was due.

Given the trial court's finding that a material term of the Settlement Agreement was that the promissory note would be paid with interest over five years, the court clearly acted within its jurisdiction in entering a judgment enforcing that term. (Cf. *Ames v. Paley* (2001) 89 Cal.App.4th 668, 674 [court could fix date of commencement of promissory note as a date prior to entry of judgment, such that interest would accrue from that point forward, where settlement agreement provided for dates on which obligation

15

was to commence and be fulfilled].)  The trial court's interpretation of the parties' agreement is consistent with the Legislature's intention of providing an efficient means of enforcing all of the terms of a settlement without the necessity of filing a separate lawsuit.  Its order did not exceed the court's jurisdiction under section 664.6.  (See *Weddington, supra,* 60 Cal.App.4th at 809.)

Poortinga also suggests that the trial court erred in entering a judgment for payment of money because, he contends, the court misconstrued Harper's section 664.6 motion "as a claim to enforce a note."  According to Poortinga, "[t]here was no claim for damages based on an alleged default on a promissory note before the [c]ourt," and thus, the trial court "was limited to ordering Poortinga to issue a note."  This argument appears to be simply another version of Poortinga's argument that the trial court acted in excess of jurisdiction in entering a judgment requiring him to pay money to Harper.  This argument fails to acknowledge that the trial court interpreted the Settlement Agreement as including the obligation not only to sign and deliver a note to Harper, but also to make payments to Harper on a specified schedule that required full payment within five years of the date of the first payment.  We therefore reject Poortinga's contention that the trial court erred by misconstruing Harper's motion to enforce the settlement agreement as a "claim to enforce a note."

B.  *The trial court did not err in considering the declarations and supporting exhibits that Harper submitted; there is sufficient evidence to support the finding that both parties voluntarily entered into the Settlement Agreement and understood its terms*

Poortinga attacks the judgment on the ground that the trial court's ruling "is not supported by substantial evidence."  (Boldface & capitalization omitted.)  Specifically, Poortinga asserts that Harper was "unable to prove

16

mutual assent" (boldface & capitalization omitted) because, he contends, Harper did not recall the terms of the settlement during his deposition, and because "[n]o witness can attest to Harper's signature" on the Settlement Agreement. Poortinga also suggests that the court erroneously concluded that "the rules of evidence do not apply to a CCP § 664.6 motion" (boldface & some capitalization omitted).

Poortinga contends that the "motion was based [solely] on the declarations of Gary Harper and Kenneth Stone," who became Harper's attorney in 2019. He complains that because Attorney Stone "did not attend the MSC" and was retained only in 2019, he was "incompetent to provide any relevant information," and the court should not have considered Stone's declaration for any purpose. Poortinga also challenges Harper's declaration, calling it "vague, ambiguous, deceptive and improper." He asserts that the "declaration does not say that [Harper] read, understood, or signed the stipulation," but instead, merely "concludes that 'the parties entered' a stipulation." According to Poortinga, the trial court should have sustained his objection to the admission of Harper's declaration "on the grounds that it is based on speculation, lacked foundation, and was thus an improper conclusion." Based on his contention that the court erred in overruling his objections to the Harper and Stone declarations, Poortinga argues that there was no admissible evidence to support Harper's motion and, thus, that the motion should have been denied. We disagree.

Harper attested in his declaration to the fact that he was a party to the Settlement Agreement. Harper clearly has personal knowledge of any agreement and can attest that the copy of the Settlement Agreement that he submitted is what it purports to be. Thus, Harper's declaration did not lack foundation and was not based on speculation, as Poortinga suggests.

17

Poortinga also contends on appeal that there was insufficient foundation for admission of the Settlement Agreement. In the trial court, Poortinga objected to the submission of the Settlement Agreement on the ground that there was insufficient foundation for it and that Harper's signature had not been authenticated or attested to. However, Harper attested that the document he submitted, which included a signature that clearly appears to read "Gary Harper," was a "true and accurate copy" of the Settlement Agreement. In doing so, Harper attested to the authenticity of the document, *including* his signature.[5] Further, the Settlement Agreement was ultimately entered as an order of the court. The trial court could therefore have taken judicial notice of the order pursuant to Evidence Code section 452, subdivision (d). Once the document was before the court, the court could make factual findings as to whether the signatures on the document were the parties' signatures, taking into account the context in which the document was made an order of the court. (See *People v. Skiles* (2011) 51 Cal.4th 1178, 1187 ["a writing can be authenticated by circumstantial evidence and by its contents"].) Moreover, because Judge Kelety entered the Settlement Agreement as a court order, she could rely on her personal recollection and the custom and practice in her courtroom with respect to entering orders memorializing settlement agreements, in

---

[5] The trial court clearly could rely on Harper's attestation regarding the authenticity of the Settlement Agreement proffered in support of his section 664.6 motion. "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) As a party to the Settlement Agreement, Harper's statement that it was an accurate depiction of the document that he and Poortinga signed was sufficient to sustain a finding that the Settlement Agreement was indeed what it purported to be.

18

concluding that there was an adequate foundational basis for the document and that Harper's signature was authentic.  (See *Richardson, supra,* 180 Cal.App.3d at p. 97 [relying on trial judge's personal recollections and experiences in determining the validity and meaning of an oral settlement agreement to be enforced pursuant to section 664.6].)  Thus, even if the court had rejected Harper's declaration, as Poortinga urged, it is simply not reasonably likely that the trial court would have concluded that these two parties did not mutually assent to the terms of the agreement as reflected in the written Settlement Agreement that was ultimately memorialized in an order of the court.

Nevertheless, Poortinga repeatedly suggests that the evidence presented to the trial court with respect to the section 664.6 motion tends to demonstrate that Harper did *not* sign the document and did not reach an agreement with Poortinga on the material terms, and that the court should not have considered the Settlement Agreement as evidence that the parties reached mutual assent as to any terms.  Specifically, Poortinga relies on some portions of Harper's deposition testimony to argue that the testimony somehow undermines the court's determination that both parties consented to the Settlement Agreement.  First, Harper submitted a declaration in which he stated that the "parties entered into a Stipulation and Order After Mandatory Settlement Conference" and submitted a copy of the Settlement Agreement, which includes the parties' and court's signatures.  Poortinga suggests that this statement in Harper's declaration is conclusory.  However, at a minimum, it is an admission by Harper that he did, in fact, assent to the terms of the Settlement Agreement, as evidenced by his execution of the document.  Further, a review of Harper's deposition testimony on which Poortinga relies demonstrates that Harper did not specifically deny signing

19

the Settlement Agreement. Rather, in his deposition testimony, Harper appeared to question whether the document that he was being shown was a true copy of the Settlement Agreement that he had signed. After expressing uncertainty about whether the document that he was being shown was an accurate copy of the Settlement Agreement, Harper was asked whether the signature on the document was his. He was equivocal, stating, "I usually scribble a little more, but then it -- I don't know, my signature changes if I'm signing a whole bunch of things -- ." Finally, he said, "Because I can't ascertain the rest of the document being an exact copy of it [i.e., the Settlement Agreement], I could see it not being my signature." Rather than constituting testimony that contradicts his declaration that the parties did, in fact, enter into a settlement agreement, this testimony suggests that at his deposition, Harper was concerned about whether the document that he was being shown was in fact a copy of the Settlement Agreement that the parties had executed.

Further, even if Harper had submitted a declaration that in some way contradicted his deposition testimony, that would not necessarily render Harper's declaration inadmissible, and the court could still have relied on the declaration. Discrepancies in the evidence would go to Harper's credibility and the weight to be afforded to Harper's declaration. Assessments of a witness's credibility are left to the trial court, even when such credibility determinations are based on a court's assessment of written declarations. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [a trial court's ability to "assess credibility and resolve any conflicts in the evidence" is entitled to great weight, and "appellate court[s] should defer to the factual determinations made by the trial court when the evidence is in conflict," irrespective of "whether the trial court's ruling is based on oral testimony or

20

declarations"].)  The court clearly found that the weight of the evidence before it demonstrated that Harper had indeed signed the Settlement Agreement, and there is no basis for second-guessing the trial court's determination in this regard.

Because the trial court could rely on the terms of the Settlement Agreement, submitted as an exhibit in connection with Harper's declaration, there is clearly substantial evidence to support the court's further finding that the parties mutually agreed to a settlement, as well as the court's findings as to the terms of that settlement.  The document provided the best evidence of what the parties had each agreed to do.  " 'Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.' . . . '[T]he parties' expressed objective intent, not their unexpressed subjective intent, governs.' " (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47, citation omitted.)  If the terms of that document are not ambiguous and the parties are not arguing for equally plausible interpretations of a word, phrase, or term, then extrinsic evidence should not even be considered by the court.  (See, e.g., *Pacific Gas & Electric Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39 [extrinsic evidence is not admissible "to add to, detract from, or vary the terms of a written contract," but may be used only to prove the meaning of a contractual term that is susceptible of either of two interpretations].)

In ruling that Poortinga was required by the terms of the Settlement Agreement not only to issue a note to Harper in the amount to which the parties had agreed, but also to make payments on that note pursuant to the schedule set forth in the Settlement Agreement and to have paid off the note by the fifth year after the first payment came due, the trial court simply

interpreted the terms of the written agreement; no additional evidence was necessary. Because the court relied on its own order, which memorialized the terms of the Settlement Agreement, and because this written agreement was sufficient, standing alone, to support the trial court's entering a judgment based on the terms of this Settlement Agreement, even if we were to presume that Poortinga is correct that the trial court should have sustained his objections to *other* evidence that Harper submitted, he cannot demonstrate that any such error was prejudicial. (See *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 293 ["[T]he 'judgment of the trial court may not be reversed on the basis of the erroneous admission of evidence, unless that error was prejudicial' "].)

We therefore reject Poortinga's arguments challenging the sufficiency of the evidence, as well as Poortinga's assertion that Harper failed to demonstrate that the parties mutually assented to the terms of the Settlement Agreement.

C. *The trial court did not err in interpreting the parties' obligations under the Settlement Agreement as being independent obligations or in rejecting Poortinga's contention that Harper's failure to perform prevents him from recovering through enforcement of the Settlement Agreement under section 664.6*

Poortinga contends, in the alternative, that the trial court erred in entering a judgment for the payment of money in favor of Harper because Harper, himself, failed to perform under the Settlement Agreement. Poortinga maintains that Harper's obligation was a "condition concurrent" to Poortinga's obligations, such that Harper's failure to perform resulted in Poortinga being relieved of any obligation to perform.

The obligations of the parties to a contract are either dependent or independent. (*Verdier v. Verdier* (1955) 133 Cal.App.2d 325, 334 (*Verdier*).)

22

The parties' obligations are considered "dependent" when the performance by one party is a condition precedent to the other party's performance. In that event, one party is excused from its obligation to perform if the other party fails to perform. (*Kaupke v. Lemoore Canal & Irrigation Co.* (1937) 20 Cal.App.2d 554, 557–558; *Starr v. Davis* (1930) 105 Cal.App. 632, 635.) Contractual obligations may also be dependent when they are concurrent conditions: Where parties' contractual obligations constitute concurrent conditions, "neither party is in default until one party performs or tenders performance." (*Ninety Nine Investments, Ltd. v. Overseas Courier Service (Singapore ) Private, Ltd.* (2003) 113 Cal.App.4th 1118, 1135.)

If the parties' obligations are independent, the nonperformance by Party A does not excuse Party B from performing pursuant to the contract. Rather, Party B must still perform and Party B's remedy is to seek damages from Party A based on Party A's breach of the contract. (See *Fresno Canal and Irr. Co. v. Perrin* (1915) 170 Cal. 411, 416; *Hall v. Dekker* (1941) 45 Cal.App.2d 783, 788.)

Whether specific contractual obligations are independent or dependent is a matter of contract interpretation based on the contract's plain language and the parties' intent. (*Verdier*, *supra*, 133 Cal.App.2d at p. 334.) "Dependent covenants . . . [']are not favored in the law [citations], and courts shall not construe a term of the contract so as to establish [that conditions are dependent] absent plain and unambiguous contract language to that effect.'" (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1183; see *Verdier*, *supra*, at p. 334 ["To construe covenants as dependent is to work a forfeiture as to one party, and no obligation of a contract is to be regarded as a condition precedent unless made so by express terms or necessary implication"].)

23

Typically, a court independently interprets the contract to determine whether its covenants are independent or dependent. (See *Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 915–916.) This is because general rules of contract interpretation apply to this determination, just as they apply to all aspects of contract interpretation. As a result, when parties offer different interpretations of contractual language, as here, where Poortinga argues that the covenants at issue are concurrent and Harper asserts that they are independent, the court must first determine whether the language is ambiguous, i.e., whether it is reasonably susceptible to the interpretation urged by a party. (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.) The "threshold determination of 'ambiguity' . . . is a question of law," "subject to independent review." (*Winet*, *supra*, 4 Cal.App.4th at p. 1165.)

The trial court specifically concluded that the Settlement Agreement "is not ambiguous," and implicitly concluded that the covenants at issue were independent, and therefore, that each party was obligated to perform his respective obligations regardless of whether the other party had performed. Our independent review of the Settlement Agreement's terms convinces us that the trial court's interpretation is correct.

The language of the Settlement Agreement demonstrates that the parties were to perform some of their obligations *by* a certain date, but apart from Poortinga's obligation to begin paying on the note on September 27, 2014, the parties were not obligated to perform *in a certain order or on a certain date*. For example, Poortinga was obligated to provide "a completed Bankruptcy petition," but he was to do so "[*n*]*o later than* September 27, 2013." (Italics added.) Another of his obligations—i.e., to "pledge all Assets in Excess of any bankruptcy exemption in favor of the Note and . . . sign any

24

further documents that are necessary to effectuate the pledge of collateral"—had no date by which it was required to be completed. Harper was obligated to give Poortinga "the shares/debentures of easi.info, inc [*sic*] . . . *no later than* September 27, 2013." (Italics added.)

The use of the phrase "no later than" demonstrates that while there was a deadline by which certain obligations were to have been performed, they could have been completed at any point in time prior to that date. The parties did not include a requirement that any of those obligations be performed, necessarily, prior to any other obligation being performed, or that these obligations would have to be performed at the same time. If the parties had intended to require that their respective obligations be performed concurrently, they could have included a provision to that effect in the Settlement Agreement.

Despite the absence of such a provision in the Settlement Agreement, Poortinga argued to the trial court, and argues again on appeal, that the parties agreed that they would perform their respective obligations concurrently. Poortinga bases this argument on communications between the parties' former attorneys that occurred *after* the parties had signed the Settlement Agreement. Poortinga asserts in his recitation of the factual history of the case that "[t]he parties agreed that when Poortinga and Harper had signed the documents [that each had agreed to provide to the other], the documents would be simultaneously exchanged." For this point, he cites to the declaration of his former attorney, in which she states that she and Harper's attorney "agreed to share the responsibility of preparing the required documents to conclude the settlement, obtain our clients' signatures, and then simultaneously exchange the documents." Poortinga contends that his "attorney's declaration that the parties agreed at the MSC to an exchange

25

of the documents is unrebutted." He further argues that "[t]he parties clearly intended and expressly agreed that their obligations were to be mutual and to occur simultaneously through an exchange of documents, and [Harper's former attorney's] October 3, 2014 letter to [Poortinga's former attorney] confirms this agreement." He asserts that this demonstrates that the obligations in the Settlement Agreement were intended to be "conditions concurrent."

We disagree with Poortinga's assessment. First, all of the evidence to which Poortinga cites involves the attorneys' attempts to assist their clients in implementing the logistics of the performance of their obligations under the Settlement Agreement. At most, this evidence demonstrates that the *attorneys* may have attempted to devise their own agreement about how their clients would conduct the exchange of documents. It does not, however, demonstrate that *the parties* ever reached such an agreement. Further, to the extent that an agreement between the attorneys would purport to add substantive terms to the Settlement Agreement, such an agreement cannot be relied on. (See *Kaufman v. Kaufman* (1980) 101 Cal.App.3d 147, 150 [affirming trial court's declination to rely on correspondence between parties' attorneys after oral stipulation was reached, and noting that counsel for parties do not have authority to bind clients to substantive terms of a settlement].) As we have already concluded, the Settlement Agreement does not impose any obligation on the parties to exchange documents simultaneously or to otherwise perform their obligations at the same time; the Settlement Agreement is thus devoid of any language indicating that the parties' respective obligations were to be concurrent conditions. The fact that the attorneys for the parties may have discussed the methods by which they

26

preferred to ensure performance of the parties' obligations cannot overcome the terms of the agreement to which the *parties* agreed.

Because we agree with the trial court that the obligations of the parties as set forth in the Settlement Agreement are independent obligations, we further conclude that the trial court did not err in rejecting Poortinga's contention that his obligations were "extinguished by Harper's rejections of tenders of performance." (Boldface & some capitalization omitted.) Relying on Civil Code section 1485, Poortinga argues that his "tenders of performance which were ignored and then rejected equate to performance as a matter of law and extinguish any further obligations to Harper." Poortinga's conditional offer to perform would not extinguish his obligations to fully perform, as he suggests. Civil Code section 1485 provides that "[a]n obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation." However, where the contract does not provide for dependent obligations, a tender of performance "must be unconditional to be valid." (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, citing Civ. Code, § 1494 ["An offer of performance must be free from any conditions which the creditor is not bound, on his part, to perform"].) Poortinga admits that his tender of performance was conditioned on Harper executing the debenture assignments and delivering them to Poortinga's attorney. Because the trial court correctly determined that the obligations set forth in the Settlement Agreement were independent, a tender of performance that was conditioned on Harper's performance was insufficient to extinguish Poortinga's obligation to fully perform.

In a related but slightly different argument, Poortinga asserts that even if Harper's obligation under the Settlement Agreement cannot be

27

understood to have been a condition concurrent to Poortinga's obligations, Harper's failure to perform his obligation under the Settlement Agreement should nevertheless bar him from *recovering* pursuant to the Settlement Agreement, under section 664.6. However, a motion to enter and enforce a judgment pursuant to a settlement agreement under section 664.6 is not equivalent to a breach of contract action, and in moving pursuant to section 664.6, Harper was not pursuing recovery for breach of a contract: "The statutory language [of section 664.6] makes it clear . . . that a party moving for the entry of judgment pursuant to a settlement under Code of Civil Procedure section §664.6 need not establish a breach of contract to support relief under the statute." (*Hines*, *supra*, 167 Cal.App.4th at p. 1185.)

In *Hines*, the court addressed a similar question concerning the effect of nonperformance by one party on the ability of that party to enforce a settlement agreement under section 664.6. (*Hines*, *supra*, 167 Cal.App.4th at pp. 1184–1185.) In *Hines*, as here, the appellant contended that the respondent was barred from enforcing the settlement agreement between the parties because the respondent had failed to perform his own obligations under the settlement. (*Id.*) In that case, the appellant contended that she had not been able to complete her performance of having a driveway resurfaced because the respondent, the owner of an adjacent property, had not provided his written consent to resurface the driveway. The *Hines* court rejected the claim that the respondent's nonperformance prevented him from seeking the entry of judgment under section 664.6, stating, "The statutory language makes it clear . . . that a party moving for the entry of judgment pursuant to a settlement under Code of Civil Procedure section 664.6 need not establish a breach of contract to support relief under the statute. Accordingly, the [trial] court was authorized to enter a judgment pursuant to

28

the settlement regardless of whether [appellant's] nonperformance of her settlement obligations was excused." (*Hines, supra*, at pp. 1184–1185.)

We agree with the *Hines* court that the fact that the party seeking entry of a judgment pursuant to the terms of a settlement agreement under section 664.6 has not, himself, performed does not prevent that party from being entitled to obtain enforcement of the settlement agreement and entry of a judgment. We therefore reject Poortinga's contention that Harper is not entitled to seek entry of a judgment pursuant to the terms of the Settlement Agreement entered between them because Harper failed to return the debentures to Poortinga.[6]

D. *There is no merit to Poortinga's contention that Harper failed to comply with the prerequisites for a §664.6 motion*

Poortinga makes a separate argument that Harper "is unable to establish strict compliance with the prerequisites for a §664.6 motion." (Boldface & capitalization omitted.) In this argument, Poortinga asserts that because "Harper has no recollection of signing the stipulation," he cannot "prove that he signed the agreement." Poortinga further suggests that Harper also cannot "prove that all parties understood all of the terms of a settlement agreement" because, Poortinga asserts, the court did not confirm with the parties that they understood the terms of the settlement agreement and that they agreed to be bound by them, and because Harper had testified at his deposition that he had been " 'hounded' by the settlement judge" into signing the Settlement Agreement. According to Poortinga, the signatures of

---

[6]    Again, Harper contends that he was unable to sign and deliver the debentures as a result of Poortinga's prior attorney's failure to provide the debentures to Harper's attorney in time to allow Harper's attorney to review them for accuracy and completeness before having Harper sign them.

all parties and proof that all parties understood the terms are prerequisites to a court's ability to enforce a settlement agreement.

These contentions are essentially a rehashing of Poortinga's contention that the evidence is insufficient to support the trial court's ruling. Again, the evidence of the signed Settlement Agreement, which was not only signed by the parties but also entered as an order by the trial court, is substantial evidence that both parties did, in fact, sign the document. Further, there is a specific provision on the Judicial Council form, which both parties signed, that states: "I have read the entire stipulation. *I understand it fully* and request the court to make our stipulation the court's order." This provision in the Settlement Agreement clearly provides sufficient evidence to support a finding that the parties understood the terms of the settlement agreement. We therefore reject Poortinga's suggestion that Harper failed to demonstrate strict compliance with the prerequisites for entering a judgment pursuant to the parties' Settlement Agreement under section 664.6.

E. *Harper did not waive his right to enforce the Settlement Agreement pursuant to section 664.6 through delay or by his earlier decision to file a separate civil suit, and the doctrine of "unclean hands" does not bar Harper from enforcing the Settlement Agreement*

Poortinga contends that Harper has waived any right to enforcement the Settlement Agreement by "elect[ing] not to" "utilize the expedited enforcement procedures set forth in §664.6." He argues that Harper's delay, caused by his filing a separate civil case and litigating that matter for multiple years, should have been construed as a waiver of section 664.6's expedited enforcement procedures.

The trial court specifically rejected Poortinga's contention that Harper's filing of a civil suit should result in his waiver of the expedited procedures of section 664.6. We see no error in the court's determination. As the trial court

30

noted, the filing or litigating of a separate civil action need not constitute the waiver of a party's ability to also pursue any remedies to which he or she may be entitled under section 664.6.  (Cf. *Hines*, *supra*, 167 Cal.App.4th at pp. 1184–1885 [party who failed to state intention of moving under section 664.6 when asked by court during separate civil harassment proceeding did not "waive[ ] or relinquish[ ] . . . his right to do so"].)

The trial court also rejected Poortinga's contention that the doctrine of laches should apply to bar Harper from obtaining relief from Poortinga.  The doctrine of laches is designed to " ' "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that, even if one has a just claim[,] it is unjust not to put the adversary on notice to defend [against that claim] within the period of limitation and that the right to be free of stale claims . . .  prevail[s] over the right to prosecute them." ' " (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1521.)  "[S]uccess on a laches claim is always uncertain because it is an equitable remedy that depends on 'the facts and circumstances of the particular case.' " (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 188.)  "Laches is an equitable, affirmative defense which requires a showing of both an unreasonable delay by the plaintiff in bringing suit, ' "plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." [Citation.]' " (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.)  " 'If, in light of the lapse of time and other relevant circumstances, a court concludes that a party's failure to assert a right has caused prejudice to an adverse party, the court may apply the equitable defense of laches to bar further assertion of the right.' " (*Ibid*.)  We

31

typically review a ruling on the applicability of the doctrine of laches for an abuse of discretion. (*Straley v. Gamble* (201 3) 217 Cal.App.4th 533, 537, 539.)

We see no abuse of the trial court's discretion in its rejection of Poortinga's assertion that laches should apply to bar Harper's section 664.6 motion. As the trial court noted, although the motion was not filed until 2019, Poortinga was put on notice of Harper's desire to ensure that Poortinga met his obligations under the Settlement Agreement as of August 18, *2015*, when Harper filed the Civil Case seeking to enforce those obligations. Further, Harper was attempting to advance the Civil Case against Poortinga throughout the intervening time period; it was not simply languishing all of that time. Indeed, a not insignificant part of the delay in the Civil Case was due to Poortinga dismissing his attorney, Poortinga representing himself, and the parties' attempts to settle the case before the initial trial readiness conference. It is thus clear that Poortinga had sufficient opportunity to prepare any defenses to Harper's attempt to enforce the terms of the Settlement Agreement. Poortinga is thus unable to demonstrate that he was prejudiced by any delay in the filing of the section 664.6 motion.

Finally, we reject Poortinga's assertion that the trial court should have barred Harper from enforcing the judgment pursuant to the doctrine of unclean hands. "The defense of unclean hands arises from the maxim, ' " 'He who comes into Equity must come with clean hands.' " ' " (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) Application of the doctrine is not a legal or technical defense that may be used as a shield against a particular claim, but is instead " 'an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim. It is available to protect the

court from having its powers used to bring about an inequitable result in the litigation before it.' " (*Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 843–844.)  Thus, " ' " 'whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him . . . ; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' " ' " (*Katz v. Karlsson* (1948) 84 Cal.App.2d 469, 474–475.)  "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." (*Kendall-Jackson, supra*, at p. 979.)  We review a trial court's decision to apply or reject an unclean hands defense for an abuse of discretion, and apply a substantial evidence standard to any factual findings made by the trial court with respect to its decision on the application of unclean hands.  (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109.)

As we have already concluded, the trial court correctly determined that the obligations imposed on the two parties to the Settlement Agreement are independent covenants.  As a result, the fact that Harper did not perform under the Settlement Agreement did not relieve Poortinga of his obligation to perform pursuant to the agreement.  The court reasoned that it was holding both parties to their obligations under the Settlement Agreement, and because Poortinga's obligations were not contingent on Harper performing, the doctrine of unclean hands should not provide Poortinga relief.  This was not an abuse of discretion, particularly in view of the fact that the court's judgment required *both* parties to perform their obligations under the Settlement Agreement.

33

F.  *Attorney fees on appeal*

Harper asks this court to award him his attorney fees on appeal.  The Settlement Agreement provides that a "[p]revailing party [is] to receive Atty fees for breach of the Agreement."  Harper acknowledges that the trial court declined to award him attorney fees or costs on his motion because it determined that "the request for enforcement could have been brought by either party based on the other's failure to perform."  He nevertheless argues that Poortinga's appeal is "solely aimed at delaying or avoiding the enforcement of the [Settlement Agreement] against him and does not concern outstanding issues of enforcement against [Harper] or [Harper's] nonperformance."  For this reason, he asserts, the Settlement Agreement authorizes an award of attorney fees to him for fees incurred in defending this appeal.

California Rules of Court,[7] rule 8.278(d)(2) provides:  "Unless the [appellate] court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702."  The introductory language of rule 8.278(d)(2) "implies . . . that when a party claims the right to an award of attorney fees on appeal pursuant to a contract or a statute, the party may request that award from the appellate court in the first instance, and the appellate court may make that award. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 925 (*Butler-Rupp*) [discussing introductory language " '[u]nless the court orders otherwise' " as used in former rule 27(c)(2), which is now rule 8.278(d)(2)].)

"[H]owever, the right to recover attorney fees does not arise from the rule; it arises from the applicable contract or statute." (*Butler-Rupp, supra*, 154 Cal.App.4th at p. 925 [determining that the contractual right to recover

---

7    Further rule references are to the California Rules of Court.

attorney fees applies to fees incurred on appeal].) We thus look to the language of the Settlement Agreement's attorney fee provision to determine whether Harper is entitled to an award of fees incurred on appeal. Although it is clear that Harper is the "prevailing party" in this appeal, we are unconvinced that Harper is the "prevailing party" as a result of Poortinga having "breach[ed] the Agreement," as is required by the terms of the attorney fee provision in the Settlement Agreement. A finding of the existence of a breach of a contract requires not only that the person accused of breaching have failed or refused to perform, but also that the person asserting the breach must have performed or be excused from performing. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) The record does not demonstrate that the court found either that Harper performed or that he was excused from performing. Rather, the court found that both parties had failed to perform under the Settlement Agreement, and ordered both parties to perform pursuant to the terms of the Settlement Agreement. As a result, there was no finding by the trial court that Poortinga "breached" the Settlement Agreement, and we are not reviewing any such finding. Because, pursuant to the terms of the Settlement Agreement, a party is entitled to fees only "for breach of the Agreement," and there has been no finding of "breach" in this case, we conclude that Harper cannot establish that he is entitled to his attorney fees on appeal. We therefore deny Harper's request for attorney fees.

IV.

DISPOSITION

The judgment of the trial court is affirmed.  Harper is entitled to costs on appeal.


AARON, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.